CROSS, and another, Petitioners-Respondents, v. SODER-BECK, Defendant-Appellant.

Supreme Court

*No. 77–191. Submitted on briefs February 7, 1980.—Decided March 4, 1980.*

(Also reported in 288 N.W.2d 779.)

For the appellant the cause was submitted on the brief of *Guy T. Ludvigson* and *Maki & Ludvigson* of Osceola.

For the respondents the cause was submitted on the brief of *James H. Taylor,* district attorney of Burnett county.

BEILFUSS, C.J. The petition for mandamus was filed December 30, 1976. It alleges that Cross was an appointed deputy sheriff and that following a thirty-day leave of absence taken pursuant to Burnett County Civil Service Ordinance, Sheriff Soderbeck refused to reinstate him in his former position. The petition further alleges that Cross filed a grievance with the Burnett County Civil Service Commission, a hearing was held on the grievance and the commission ordered Cross' reinstatement. Despite the commission's order, Sheriff Soderbeck refused to reinstate Cross as deputy sheriff.

The parties stipulated the facts. They are in substance as follows: Iver Cross was appointed deputy sheriff on February 19, 1971, after having been certified by the

Burnett County Civil Service Commission on the basis of an examination given on December 5, 1970. In 1972 Cross was elected as a write-in candidate for the office of Burnett County Coroner. He served in that capacity from January, 1973, to January, 1975, and, at the same time, continued in his position as deputy sheriff. He neither requested nor received a leave of absence during either the campaign or his term of office as county coroner.

In 1974 Cross was a write-in candidate for the office of Sheriff of Burnett County. He was asked by members of the Burnett County Law Enforcement Committee to publicly disclaim his candidacy following the appearance of newspaper advertisements supporting his election, but he refused. Sheriff Soderbeck was re-elected.

On May 20, 1976, the Burnett County Board of Supervisors passed a resolution entitled "Amendment to the Civil Service Ordinance (Sheriff's Department) of January 1, 1970, as amended February 28, 1973." In pertinent part it provides:

*"RESOLUTION NO. 2*

*"AMENDMENT TO CIVIL SERVICE ORDINANCE*

"SHERIFF'S DEPARTMENT OF JANUARY 1, 1970
AS AMENDED FEBRUARY 28, 1973.

"WHEREAS, the Burnett County Board of Supervisors desires to maintain a well-trained and efficient Sheriff's Department; and

"WHEREAS, updating the Civil Service Ordinance periodically will help achieve that goal;

"NOW, THEREFORE, BE IT RESOLVED BY THE BURNETT COUNTY BOARD OF SUPERVISORS that:

" . . .

"4. If any deputy runs for an elected office he shall take a leave-of-absence without pay for 30 days prior to the General Election. He shall retain fringe benefits and seniority rights. If there is a write-in campaign, the deputy shall declare his intention immediately by written notice to the Law Enforcement Committee with a copy to the Sheriff. The Law Enforcement Committee shall publish in the County paper any declaration of intent filed by a deputy."

On September 23, 1976, Cross advised the Burnett County Law Enforcement Committee that he intended to run for the office of Burnett County Sheriff. Sheriff Soderbeck informed Cross on October 1, 1976, that he would not be permitted to take a leave of absence because, during at least two weeks of the time requested, Cross would be the only deputy available for duty.

Cross nevertheless took the leave and was again defeated by incumbent Sheriff Soderbeck in the November, 1976, general election. Following the election Cross requested reinstatement, but Soderbeck refused.

The issues are as follows:

1. Was the May 20, 1976 amendment to the Burnett County Civil Service Ordinance effective?

2. Did Cross forfeit his civil service status in 1972 when he was elected Burnett County Coroner and served in that capacity until January 1, 1975?

The appellant Soderbeck contends that the May 20, 1976 amendment of the civil service ordinance was ineffective and void because the Burnett County Board failed to use the statutorily required form for the enactment of ordinances.

Sec. 59.02 (2), Stats., setting forth powers of a county board, provides:

" (2) Ordinances and resolutions may be adopted by a majority vote of a quorum or by such larger vote as may be required by law. Ordinances shall commence as fol-

lows: "The county board of supervisors of the county of . . . . do ordain as follows'."

The 1976 amendment to the Burnett County Civil Service Ordinance of January 1, 1970, was labeled "RESOLUTION NO. 2." The enacting language began with the words—"NOW, THEREFORE BE IT RESOLVED BY THE BURNETT COUNTY BOARD OF SUPERVISORS that . . . ."

Appellant argues that sec. 59.02(2), Stats., prescribing the precise form to be used for county ordinances must be construed as mandatory and that the county board's failure to comply with the statute renders the attempted amendment of the original civil service ordinance void.

The pertinent portion of the original ordinance reads as follows:

SECTION X. **General Provisions.** (1) No person holding the office of deputy sheriff under this ordinance shall be employed in any other capacity and shall not secure temporary employment unless such employment has been approved by the Sheriff. No person holding the office of deputy sheriff under this ordinance shall engage in any political activity whatsoever while on duty, or shall engage in open campaigning for any candidate for public office at any time.
"(2) . . .
"(3) . . .
"(4) The Sheriff may in his discretion grant any deputy sheriff temporary leave of absence without pay upon the request of such deputy, and any deputy desiring to become a candidate for a partisan political office shall cease to be a deputy sheriff, and shall no longer be considered an employee of that department."

It is Soderbeck's position that the amendment was invalid and the original ordinance controls. He further argues that under the original ordinance the granting of temporary leaves of absence to deputy sheriffs remains

within the sheriff's discretion, and because Cross' leave was unauthorized under the original ordinance he was justified in refusing to reinstate Cross.

It is the rule that "[a]n ordinance cannot be amended, repealed or suspended by an order or resolution, or other act by a council of less dignity than the ordinance itself." 6 McQuillin, *The Law of Municipal Corporations,* (3d ed. 1969), p. 199, sec. 21.04. In *WERC v. Teamsters Local No. 563,* 75 Wis.2d 602, 613, 250 N.W.2d 696 (1977), in rejecting a union's argument that an ordinance imposing a residency requirement upon city employees must be accommodated with the "legislative enactment" adopting the contract between the union and the city, this court pointed out:

". . . the residency requirement was part of an ordinance, whereas the adoption of the contract was by motion—'A resolution ordinarily denotes something less solemn or formal than, or not arising to the dignity of, an ordinance.' 5 McQuillin, *The Law of Municipal Corporations,* (3d ed. 1969), p. 42, sec. 15.02. Therefore there was no need to accommodate the ordinance and the resolution. The resolution did not rise to the dignity of a repeal or amendment of the ordinance."

From these authorities it follows that, unless the Burnett County Board enactment of May 20, 1976 was the legislative equivalent of its county civil service ordinance, the amendment was invalid and ineffective.

The respondent Cross asserts two theories upon which he states the court should find the amendment valid. He argues, first, that sec. 59.02(2), Stats., is directory only and therefore the failure of the county board to use the proper form does not render the amendment void. Secondly, Cross argues that substantial compliance is all that is required under sec. 59.02(2) and the amendment by the county board does substantially comply with the requirement of that section.

Regardless of whether sec. 59.02(2), Stats., is directory or requires only substantial compliance, however, it is clear from a reading of both the original civil service ordinance and the purported amendment to it that they are of "equal dignity." This is because the original ordinance, just as its amendment, was enacted without the introductory form prescribed by sec. 59.02(2). Instead it contains the same language as was used in the amendment: "THEREFORE, BE IT RESOLVED BY THE BURNETT COUNTY BOARD OF SUPERVISORS, that . . . ." Just as the amendment was designated "RESOLUTION NO. 2," so the original civil service ordinance appears in the record of the "Burnett County Board Proceedings" under the heading "RESOLUTION NO. 6." Although the original enactment is also referred to as an ordinance in the board proceedings—in fact, it is entitled, "An Ordinance to Provide For Civil Service Examinations For Deputy Sheriffs: For the Creation of a Civil Service Commission For the Sheriff's Department: For the Term of Office and the Method of Dismissal of Deputy Sheriffs"—it clearly lacks the formal language required under sec. 59.02(2). Because the original ordinance and the subsequent amendment suffer from the same defect, they are of equal validity. We, therefore, conclude the amendment effectively amended the original enactment.

The question that remains, however, is whether the Burnett County Civil Service Ordinance, as amended on May 20, 1976, is a valid ordinance. Under sec. 59.21(4), a deputy sheriff is to hold office "during the pleasure of the sheriff." Sub. (8) of sec. 59.21 permits a county to place the deputy sheriff position under civil service and thereby limit the power of the sheriff to hire and fire deputies and regulate hours of employment and tours of duty. However, the statute provides that establishment

of a civil service system for deputy sheriffs is to be accomplished by ordinance. Unless the Burnett County ordinance is valid, it would appear that Cross is not entitled to the protection of civil service. We must therefore decide whether the county's failure to use the statutorily prescribed language in enacting the ordinance renders it void.

The answer to this question depends upon whether sec. 59.02, Stats., is mandatory or directory. If mandatory, the failure to comply is fatal and the ordinance void. If, on the other hand, the statutory provision is merely directory, the county's failure to use the proper form is not fatal and the ordinance is valid if the essential requirements for the enactment of an ordinance have been complied with.[1]

Whether a statute is mandatory or directory is a question of statutory construction. While the general rule is that the use of the word "shall" connotes a mandatory requirement, it will be construed as directory if necessary to carry out the legislature's clear intent. *Karow v. Milwaukee County Civil Service Comm.*, 82 Wis.2d 565, 570–71, 263 N.W.2d 214 (1978). 2A Sands, Sutherland, *Statutory Construction*, sec. 57.03 (1973). The factors to be considered in choosing the proper constructions were set forth in *State v. Rosen*, 72 Wis.2d 200, 207, 240 N.W.2d 168 (1976), as follows:

" 'In determining whether a statutory provision is mandatory or directory in character, we have previously said that a number of factors must be examined. These include the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation. *Marathon County v.*

---

[1] *See Muskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B.*, 32 Wis.2d 478, 483, 145 N.W.2d 680, 147 N.W.2d 541, 151 N.W.2d 84 (1966).

*Eau Claire County* (1958), 3 Wis. (2) 662, 666, 89 N.W. (2d) 271; *Worachek v. Stephensen Town School Dist.* (1955), 270 Wis. 116, 70 N.W. (2d) 657. We have also stated that directory statutes are those having requirements "which are not of the substance of things provided for." *Manninen v. Liss* (1953), 265 Wis. 355, 357, 61 N.W. (2d) 336.' "

In applying this test to sec. 59.02 (2), Stats., the trial court noted that the requirement that a particular form be used does not go to the substance of the matter, no penalty is provided for noncompliance and there is no evil to be remedied that could not be remedied with other sufficient but similar language. The trial court also stated it found it "difficult to conceive that the legislature intended to mandate the use of such language thereby honoring form over substance and creating what the court suspects might be a situation of invalidating many of Burnett County's ordinances." For these reasons the trial court concluded that sec. 59.02 (2) was directory rather than mandatory.

We believe the trial court's analysis was correct and should be adopted by this court. In *Burgess v. Dane County,* 148 Wis. 427, 436, 134 N.W. 841 (1912), the court stated, "In the case of minor deliberative bodies such as county boards, the language of their resolutions will receive a liberal construction in order to effectuate their evident intent." The clear intent of the Burnett County Board in amending its civil service ordinance was to permit deputy sheriffs to run for elected office without losing their status as deputies. Its intent should not be thwarted simply because the precise statutory form was not used.

In *State ex rel. Dunlop v. Nohl,* 113 Wis. 15, 29, 88 N.W. 1004 (1902), a municipal ordinance was challenged on the ground that its enacting clause read, "The mayor

and common council of the city of Ripon do ordain as follows," while the relevant statute required the enacting clause to be, "The common council of the city of ——— do ordain as follows." The court rejected the challenge, saying—"We think the variance is immaterial." The language used sufficiently asserted that the matter was ordained by the common council and the addition of the mayor's sanction did not render it invalid.[2]

In the early case of *Wisconsin Gas & Electric Co. v. Fort Atkinson*, 193 Wis. 232, 243–44, 213 N.W. 873, 52 A.L.R. 1033 (1927), this court also indicated that the precise wording or label for the enactment was not determinative of its validity as an ordinance. The court discussed the distinction between an ordinance and a resolution or lesser action by a local governmental body and concluded that, even if an enactment was technically not an ordinance, it would be given such effect if it was passed with the statutory formality required for an ordinance.

"Such is the general rule. 'A municipal ordinance or by-law is a regulation of a general, permanent nature, enacted by the governing council of a municipal corporation. . . . A resolution, or order as it is sometimes called, is an informal enactment of a temporary nature, providing for the disposition of a particular piece of the administrative business of a municipal corporation. . . . And it has been held that even where the statute or municipal charter requires the municipality to act by ordinance, if a resolution is passed in the manner and with the statutory formality required in the enactment of an ordinance, it will be binding and effective as an ordinance.' 19 Ruling Case Law, p. 895, sec. 194."

It follows from the above that the failure of the Burnett County Board to use the prescribed language of sec.

---

[2] *Jackson v. City of Prichard*, 24 Ala. App. 532, 137 So. 469 (1931); *Schmitt v. City of Hazelwood*, 487 S.W.2d 882 (Mo. App. 1972).

59.02(2), Stats., does not render its civil service ordinance and the 1976 amendment void. "The only substantial difference between a resolution and an ordinance apart from the subject to which it shall apply is that one is required to be published subsequent to its passage and the other is not." *Wisconsin Gas & Electric Co. v. Fort Atkinson, supra,* 193 Wis. at 244. *See also* sec. 59.09(1). No claim has been made that the original ordinance and subsequent amendment were not properly published and both enactments were passed with near unanimous approval of the county board. Under these circumstances no persuasive reason appears why the clear intent of the Burnett County Board should not be given effect.

Appellant's second contention that the 1976 amendment, to the civil service ordinance is invalid because it fails to specify which portions of the original ordinance are repealed is without merit. This argument is based upon the rule of statutory construction that implied repeals of earlier statutes are not favored, and "an earlier act will be considered to remain in force unless it is so manifestly inconsistent and repugnant to the later act that they cannot reasonably stand together."[3] From this, however, it does not follow that an amendment which does not expressly state what changes are to be made in the original enactment is void.

Whenever a court is confronted with apparently inconsistent legislation, its goal is to ascertain the intent of the legislative body and construe the law accordingly. The intent of the Burnett County Board here is clear. Its purpose in passing the May 20, 1976 act was to amend the civil service ordinance. This intent is expressly stated. Thus, there is no need to attempt to reconcile the two

[3] *Lenfesty v. Eau Claire,* 245 Wis. 220, 227, 13 N.W.2d 903 (1944).

acts. That part of the original ordinance which is inconsistent with the amendment is repealed. Because a deputy sheriff is expressly permitted under the 1976 enactment to take a leave of absence if he runs for political office, without losing either his fringe benefits or seniority rights, those portions of the original ordinance which placed all discretion regarding leaves of absence with the sheriff and which required a deputy to terminate his employment in order to run for political office are necessarily repealed.

In amending the civil service ordinance as it did, the Burnett County Board was proceeding under the authority granted it by sec. 59.21(8)(a), Stats. That section specifically empowers the county to provide by ordinance "for employe grievance procedures and disciplinary actions, for hours of work, for tours of duty according to seniority and for other administrative regulations." From this it clearly follows that appellant's contention that the board acted beyond its authority in amending the civil service ordinance as it did is also without merit. An ordinance granting deputy sheriffs the right to take a leave of absence for the purpose of running for political office falls directly within the scope of authority granted the county under sec. 59.21. *See Fuller v. Spieker,* 265 Wis. 601, 62 N.W.2d 713 (1954).

Lastly, appellant argues that Cross had no civil service status on May 20, 1976, by virtue of his election and serving as Burnett County Coroner in 1972. Under the original civil service ordinance which applied at that time, a deputy sheriff who ran for and was elected to office could no longer be considered an employee of the department. Appellant contends that, by serving as county coroner from 1973 to 1974, Cross forfeited his civil service status. Although Cross continued to serve as deputy sheriff throughout his term of office as coroner

and after that term expired, appellant claims he could not have regained his civil service status without again complying with the requirements of the ordinance and that he is not entitled to the protection of civil service here.

A similar situation was before the court in *Becker v. Spieker*, 265 Wis. 605, 62 N.W.2d 715 (1954). In that case a deputy sheriff under civil service obtained temporary leave of absence in order to accept appointment as undersheriff. He subsequently took office as sheriff, but sought no leave of absence for this period. Following his term as sheriff he requested reinstatement in his former position as deputy sheriff but was refused. This court held that he abandoned his civil service status when he failed to obtain a leave of absence for the period during which he served as sheriff. "Having lost his civil-service status," said the court, "petitioner cannot rely upon sec. 59.21(1), Stats., to restore him to his former position." *Id.* 265 Wis. at 609.

Similarly, appellant argues here that Cross abandoned his civil service status when he ran for and served as Burnett County Coroner, and is therefore not entitled to reinstatement.

This case is readily distinguishable from *Becker v. Spieker* in that in this case Cross had never ceased serving as deputy sheriff during the term of his office as coroner and he continued in his position as deputy sheriff after his term of office as coroner was over. Had it been brought to his attention that he could not serve in both capacities at the same time, Cross may very well have terminated his employment with the sheriff's department. However, it was never brought to his attention and he claims it is too late to deprive him of civil service status now for past conduct which he was unaware was forbidden. As the trial court stated with respect to this issue in its memorandum decision:

"Clearly this would have been a persuasive argument four or five years ago. However, at some point, and in the court's opinion we are at that point, estoppel or perhaps laches becomes applicable. Otherwise the board or anyone else might allow a deputy to continue service for say 20 years on essentially a sufferance basis and then discharge that deputy upon the occurrence of some disagreement. This obviously would create a dangerous situation for improper control or influence and is in the court's opinion an untenable position."

Despite appellant's position that Cross abandoned his civil service status by running for county coroner in 1972, he did nothing about it until late 1976 when Cross sought reinstatement after taking leave to run against him in the capacity of deputy sheriff, unaware that any question could be raised regarding his civil service status.

Under these facts Cross should be allowed to assert the defense of laches. "To successfully assert the defense of laches it must be established that there exists: '(1) unreasonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and (3) prejudice to the party asserting the defense in the event the action is maintained.'" *Schneider Fuel v. West Allis State Bank,* 70 Wis.2d 1041, 1053, 236 N.W.2d 266 (1975).

All three requirements appear here. The delay of four to six years in asserting Cross' loss of civil service status by Soderbeck is unexplained. Cross had no knowledge that his status was in doubt. And lastly, Cross was prejudiced in that, if he had known, he could have attemped to regain his status, or at least avoided a confrontation with his superior. The appellant should not be allowed to assert a challenge to Cross' civil service

status which is based on a long past violation of an ordinance that has since been repealed.

*By the Court.*—Judgment affirmed.