IN the INTEREST OF F.T., a person under the age of
18: F.T., Appellant,

v.

STATE of Wisconsin, Respondent.

Court of Appeals

*No. 88-2033. Argued March 22, 1989.—Decided April 20, 1989.*

(Also reported in 441 N.W.2d 322.)

217

For the appellant there were briefs by *Eileen Hirsch,* assistant state public defender, and *Barbara K. Due,* assistant state public defender, and oral argument by *Eileen Hirsch,* assistant state public defender.

For the respondent there was a brief by *Nick Schwietzer,* assistant district attorney, and oral argument by *James H. Dumke,* assistant district attorney.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.    This appeal asks us to decide whether a court may impose sanctions for violation of the conditions of a dispositional order in a juvenile proceeding where the order did not contain "[a] statement of the conditions with which the child [was] required to comply," under sec. 48.355(2)(b)7, Stats.,[1] and where the court failed to "explain[ ] the conditions to the child" at the dispositional hearing, as required by sec. 48.355(6)(a).[2] We hold that the failure to include the

---

[1] Section 48.355(2)(b)7, Stats., provides that dispositional orders in juvenile proceedings "*shall* be in writing and *shall* contain. . .[a] statement of the conditions with which the child is required to comply." (Emphasis added.)

[2] Section 48.355(6)(a), Stats., provides that "[i]f a child who

conditions in the written order and the failure to explain them to the child at the dispositional hearing vitiate the court's authority to impose sanctions for their violation under sec. 48.355(6)(d). We therefore find it unnecessary to consider other issues raised by the parties.

The facts are conceded. F.T. was adjudged delinquent in June, 1988, and was placed on formal supervision for one year. At the dispositional hearing, the court advised F.T. that certain "rules of supervision" would apply to him, and that he would be "specifically advised as to what they are." Then, without discussing the "rules" further, the court proceeded to list the various sanctions that could be imposed for their violation.

As the court prepared to adjourn the hearing, a juvenile probation officer suggested that "go[ing] over" the conditions with F.T. "on the court record" might be necessary "in order for the sanctions to be valid." The court responded: "I will b[e] glad to make my own rules if that's what you want . . .. I will set down the rules. . .and I will tell you they will be more stringent than the ones the Probation Department will give him." F.T.'s attorney then stated: "I guess, for purposes of this particular hearing, I'm prepared to stipulate that the usual rules of supervision and probation are appropriate." The court replied that it would give a copy of the "rules of probation" to F.T. and that if F.T. had any questions, it would "explain them to him further." F.T.'s

has been adjudged delinquent violates a condition specified in sub. (2)(b)7, the court may impose on the child one of the sanctions specified in par. (d) *if, at the dispositional hearing. . .the judge explained the conditions to the child* and informed the child of the possible sanctions. . .for a violation." (Emphasis added.) Permissible sanctions under sec. 48.355(6)(d) include placement in a secure detention facility for not more than ten days.

attorney then suggested: "[P]erhaps what we could do is I could review these with my client, and we'll come back in a minute. You could perhaps go ahead with your next hearing, and I will advise the court if there are problems." The hearing then concluded and a written order was prepared adjudging F.T. delinquent. The only conditions stated in the dispositional order were that F.T. make restitution (the underlying offense was forgery) and that he undergo a drug and alcohol assessment. No other conditions or "rules" appear on the face of the order.[3]

F.T.'s attorney returned to court some time later and stated on the record that he had gone over "each of the rules of supervision" with F.T., "adding in a couple of things," and that he "explained those rules to him, had him sign a copy of those rules at the bottom. . .and his signature. . .purports to suggest that he understood the rules of supervision."

Several months later, a hearing was convened on the state's motion to impose sanctions on F.T. for violation of one or more of the "conditions" of his disposition. While the motion papers are not in the record, the alleged "violations" appear to involve matters contained in the "rules" purportedly explained to F.T. by his attorney. They do not relate to restitution or drug assessment, the only conditions specified in the order itself. F.T., appearing with new counsel, moved to dismiss the proceedings on grounds that the court lacked authority to proceed because the dispositional order did not contain a statement of conditions and, further, that the

---

[3] The order is a printed form, and, following the statement "IT IS ORDERED. . .that," a box is checked stating "Place child under supervision of an agency or person. *(Specify reasonable rules of conduct)*." (Emphasis in original.) As indicated, the order contains no further entries on the subject.

record of the dispositional hearing established that the court had not explained the conditions, all as required by sec. 48.355, Stats. Concluding that it had "complied with the spirit of the statute" at the earlier hearing, the court denied the motion and ordered that F.T. spend five days in secure detention as a sanction for violation of "a condition" of the "court ordered rules."[4] Other facts will be referred to in the body of the opinion.

The state, assuming that both statutes are directory, rather than mandatory, argues that the procedures used by the trial court at the dispositional hearing substantially complied with the statutory requirements. We disagree.

If, as the state contends, the statutes are not mandatory, but merely directory in nature, substantial compliance with their terms would be sufficient. *Cross v. Soderbeck,* 94 Wis. 2d 331, 340, 288 N.W.2d 779, 782–83 (1980). Whether a statute is mandatory or directory is a matter of statutory construction, *id.,* and that is a question of law which we consider independently, owing no deference to the trial court's decision. *Chomicki v. Wittekind,* 128 Wis. 2d 188, 193, 381 N.W.2d 561, 563 (Ct. App. 1985).

Section 48.355(2)(b)7, Stats., states plainly that dispositional orders *"shall* be in writing" and *"shall* contain. . .[a] statement of the conditions with which the child is required to comply." (Emphasis added.) Use of the word "shall" creates a presumption that the statute is mandatory. *Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978). And that presumption is strengthened where the legisla-

---

[4] The order does not explain the violation further.

221

ture uses the word "may" in the same or related sections, for such use demonstrates that "the legislature was aware of the different denotations and intended the words to have their precise meanings." *Id.* at 571, 263 N.W.2d at 217.

The issue in *Karow* was whether a statute stating that a county civil service commission "shall" schedule a hearing within 3 weeks of the filing of employer disciplinary charges was mandatory or directory. The court noted first that even where "shall" and "may" are used in the same section of the statute, the former term may nonetheless be construed as directory if such a construction is "necessary to carry out the legislature's clear intent." *Id.,* 82 Wis. 2d at 571, 263 N.W.2d at 217. It then went on to discuss cases considering the mandatory or directory nature of statutory time limitations, concluding that, in such cases, the following factors could be considered to determine whether the legislature considered the limitations to be mandatory or directory: (1) "omission of a prohibition or a penalty"; (2) "the consequences resulting from one construction or the other"; (3) the "nature of the statute, 'the evil to be remedied, and the general object sought to be accomplished' by the legislature"; and (4) whether "failure to act within the . . . time limit . . . work[s] an injury or wrong." *Id.* at 572, 263 N.W.2d at 217-18. Analyzing the hearing time limit statute in light of these considerations, the court held it to be directory.

Section 48.355(2)(b)7, Stats., of course, has nothing to do with time limitations. It simply requires that dispositional orders state the conditions with which the juvenile must comply.

In cases following *Karow,* use of the "four-factor" analysis appears to have been limited to cases involving statutes or rules setting time limits for the taking of

some action. *See, e.g., In Matter of Guardianship of N.N.*, 140 Wis. 2d 64, 65, 409 N.W.2d 388, 389 (Ct. App. 1987) (sec. 55.06(11)(c), Stats., stating that "[u]pon a finding of probable cause [under the guardianship/protective placement law] the court may order temporary placement up to 30 days pending [final] hearing"); *St. Michael's Church v. Admin. Dept.*, 137 Wis. 2d 326, 329, 404 N.W.2d 114, 116 (Ct. App. 1987) (sec. 50.04(5)(e), Stats., providing that, upon receiving a request for hearing, the department of administration "shall commence the hearing within 30 days"); *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 327, 320 N.W.2d 27, 29 (Ct. App. 1982) (sec. 51.20(7)(c), Stats., stating that where court determines probable cause to detain a person under the mental commitment law, "it shall schedule. . .a hearing within 14 days"); *Warner v. Department of Transp.*, 102 Wis. 2d 232, 233 n. 1, 306 N.W.2d 266, 267 (Ct. App. 1981) (provision in sec. 344.13(3), Stats., stating that the secretary of transportation "shall give. . .written notice" to drivers within ninety days after receiving certain accident reports).

In non-time limit cases, however, both this court and the supreme court, while citing *Karow,* have declined to apply the *Karow* analysis and have instead decided the mandatory/directory issue simply by looking to the terms of the statute itself. In *Sommer v. Carr,* 95 Wis. 2d 651, 653–54 n. 1, 291 N.W.2d 301, 302 (Ct. App. 1980), *rev'd on other grounds,* 99 Wis. 2d 789, 299 N.W.2d 856 (1981), for example, the issue was whether the provision in the "frivolous action" statute, sec. 814.025, Stats., stating that, upon a finding that the action was frivolous, "the court shall award . . . costs . . . and reasonable attorney fees," was mandatory or directory. We held that it was mandatory, using the following analysis:

Use of the word "shall" creates a presumption that the statute is mandatory. *Karow v. Milwaukee County Civil Service Commission,* 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978). The presumption is strengthened where the legislature uses "may" in the same or related statutory sections. Such use demonstrates recognition of the differences in the meanings of the two words and implies purposeful use of each. *Id.* at 571, 263 N.W.2d at 217. In [other sections of the statute] the legislature provides that costs and fees "may" be assessed to either the party or attorney. . .that in equitable actions and special proceedings, costs "may" be assessed among the parties and attorneys . . .. The court's discretion is also recognized in [still other subsections]. The language of these sections instructs that the legislature knows how to grant discretion where it desires to do so in the area of costs, and that the use of the word "shall" in sec. 814.025(1) was purposeful.

In a more recent case, the supreme court considered whether the provisions of secs. 805.13(4) and 972.10(5), Stats., stating that trial courts "shall provide" juries with written copies of jury instructions were mandatory or directory. Again, the "*Karow* factors" were never discussed, and the supreme court held the statutory language to be mandatory. The court's reasoning, in its entirety, is as follows:

The general rule is that, when the word ["shall"] is used in a statute, it is presumed mandatory unless a different construction is necessary to carry out the clear intent of the legislature. There is little doubt that the legislature intended secs. 805.13(4) and 972.10(5), Stats., to be mandatory. "When the words 'shall' or 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words

to have their precise meanings." [Citing *Karow.]* The words "shall" and "may" each appear several times in secs. 805.13 and 972.10. Thus the requirement that the court *shall* provide certain instructions in written form is mandatory.

*In Matter of E.B.,* 111 Wis. 2d 175, 185–86, 330 N.W.2d 584, 590 (1983) (citations omitted; emphasis in original). We believe the same reasoning compels the conclusion in this case that sec. 48.355(2)(b)7, Stats., requiring dispositional orders to contain statements of the conditions upon which they were issued, is a mandatory statute, and that failure to comply with its terms voids the order.

First, while the word "shall" appears frequently in the lengthy provisions of sec. 48.355, Stats.,[5] the statute uses the word "may," or the phrase "shall include, but not be limited to," or "shall . . . unless," or "[w]herever possible. . .shall," on nearly as many occasions.[6] Second, we see nothing in the statute suggesting that the

---

[5] *E.g.,* "[t]he disposition *shall . . .* protect the child's well-being"; "the judge *shall* make written findings of fact"; "[d]ispositional orders . . . *shall* be based upon the evidence"; "[n]otice of the motion [for sanctions] *shall* be given to the child"; "[b]efore imposing any sanction, the court *shall* hold a hearing.. . ." (Emphasis added.)

[6] *E.g.,* "[t]he. . .order *may* include. . .transitional placements"; "the court *may* place. . .limitations on interim arrangements made for the care of the child"; "the judge *may* set reasonable rules of parental visitation"; "[t]he judge *may* make the order apply for up to 2 years"; "[t]he court *may* impose. . .one of the [following] sanctions"; "*[w]herever possible* the family unit *shall* be preserved"; "the court's consideration of [the agency's] reasonable efforts [to provide for the child's return to his or her home] *shall include, but not be limited to";* "all orders . . . *shall* terminate at the end of one year *unless* the judge specifies a shorter period of time." (Emphasis added.)

legislature had the "clear intent" that the phrase "the order *shall* be in writing and *shall* contain. . .the conditions" really means "the order *may* be in writing and *may* contain. . .the conditions." Indeed, our reading of the statute as a whole, which, as we have said, is replete with discretionary or directory language on other aspects of the juvenile disposition process, satisfies us to the contrary. In this particular section, the legislature did not, as it did in other parts of the statute, use "may," or "shall include but not be limited to," or "shall. . .unless." It used "shall," and we believe that is what it meant.

Nor do such "*Karow* factors" as might conceivably be relevant to the analysis of a non-time limitation statute compel a different result. As we have noted, the *Karow* court referred to the following factors: (1) the absence of a prohibition or penalty; (2) the consequences resulting from one construction or the other; (3) the nature of the statute, the evil to be remedied, and the general object sought to be accomplished by the legislature; and (4) whether failure to act within the time limit works an injury or wrong. *Id.,* 82 Wis. 2d at 572, 263 N.W.2d at 217-18. The fourth factor is, by its terms, inapplicable to non-time limitation cases, and the first seems to us to be equally inapplicable.[7] As to the second,

---

[7] The absence of a "prohibition or penalty" for noncompliance seems of little value in analyzing a non-time limitation statute. Section 48.355, Stats., for example, uses the word "shall," without any modifications or limitations, more than fifteen times, and it uses the word "may" or otherwise specifically qualifies the word "shall" ("shall . . . unless"; "shall . . . but") at least thirteen times. It seems to us that, under these circumstances, it would be unreasonable, if not absurd, to require the legislature to add to each use of the word "shall" a qualifying or modifying

the primary "consequences" resulting from a mandatory construction of sec. 48.355(2)(b)7, Stats., are that the child will receive an order containing a full explanation of what is necessary for compliance, and what conduct must be eschewed in order to avoid the sanctions which may be imposed for violation. Certainly that is a desirable result—especially when compared with the consequences of a directory construction.

Were we to construe as directory the requirement that dispositional orders be in writing and contain a statement of conditions, verbal summaries of the disposition, its conditions and consequences, would suffice; or, as here, courts could simply rely on others to communicate this basic and vital information to the juvenile at a time and place far from the courtroom. In our opinion, considerations of clarity, definiteness and adherence to basic principles of due process of law lead to the conclusion that the "consequences" of a mandatory construction are conducive not only to realization of the aims of particular juvenile court proceedings, but to the integrity of the judicial process itself. And because the same considerations may also be viewed as the "object[s] sought to be accomplished" by the statute, that aspect of the *Karow* rationale also favors a mandatory construction in this case.

Finally, we believe a similar construction must be applied to the requirement of sec. 48.355(6), Stats., which empowers the court to impose sanctions for violation of the conditions of the dispositional order. As we have noted, that section provides that the court "may impose [sanctions] *if,* at the dispositional hearing. . .the judge explained the conditions to the child and informed

phrase such as "or else the order is void," or "failure to do so nullifies the court's action," or similar language.

the child of the possible sanctions. . .for a violation."
(Emphasis added.) Here, while the court did inform F.T.
of the possible sanctions for violation of the conditions,
it made no attempt to explain the conditions to him.
Instead, the court requested that the clerk provide F.T.'s
attorney with a sheet of paper on which they were writ-
ten, and asked the attorney to explain the conditions to
F.T. Indeed, there is nothing in the record to indicate
that F.T. was ever given the sheet, for the original docu-
ment remains part of the court record.

Here, too, we believe the intent of the statute is
evident in the language chosen by the legislature. Sec-
tion 48.355(6)(a), Stats., grants the juvenile court
authority to impose one of several listed sanctions for
violation of the conditions of a dispositional order "*if*"
the court had "explained the conditions to the child" at
the dispositional hearing. (Emphasis added.) Under sec.
990.01(1), Stats., "[a]ll words and phrases shall be con-
strued according to common and approved usage," and
we have long recognized that the common and approved
meaning of a word can be established by reference to a
recognized dictionary. *In Interest of B.M.,* 101 Wis. 2d
12, 18, 303 N.W.2d 601, 605 (1981). "If" is a plain and
unambiguous term embodying a similarly plain concept.
It is a word of condition, and Webster defines it as such:
"in the event that. . .." Webster's Third New Interna-
tional Dictionary 1124 (1976). Applying that definition
to sec. 48.355(6)(a), the plain import of the statute is:
"In the event that" the court has explained the condi-
tions to the child at the dispositional hearing, then it
may, in a proper case, impose a sanction for violation of
those conditions.

In our view, the language used by the legislature in
this section is no less mandatory than the language it

used in sec. 48.355(2)(a), Stats. Had it intended that the court could delegate or assign the statutory task of explaining the order to the child to an attorney, or some other person, the legislature could have used language to that effect—e.g., "if the court has explained the order to the child, or is otherwise satisfied that the child understands the conditions," or words of similar import. But it did not do so, and there is nothing in the statute indicating its "clear intention" to have the words in sec. 48.355(6)(a) mean something other than what they plainly say.

Nor do we believe that the court's action in delegating the statutory task of explaining the conditions to the child's attorney complies with the legislative mandate. We can, and do, appreciate the pressures and constraints of a busy juvenile court calendar, and we recognize that repeated daily recitation of standard phrases or "lists" of rules or conditions can, after time, take on the appearance of an empty ritual. It is undoubtedly true, too, that counselors, juvenile court workers or attorneys can explain the conditions of a dispositional order equally as well—if not better—than the court. But the fact remains that the legislature has assigned that task to the court, and there is nothing in the language of that assignment to suggest that it is delegable to others.

While no constitutional due process issues have been raised in this case, and while there is no suggestion that the trial court acted arbitrarily or otherwise abused its discretion in setting the terms of the dispositional order, we believe our comments on the nature and importance of the court's role in juvenile proceedings in *In re Contempt Finding Against B.L.P.*, 118 Wis. 2d 33, 38, 345 N.W.2d 510, 513 (Ct. App. 1984), are appropriate here as well: "[P]rocedures which are informal and arbi-

trary and where unbridled discretion is the rule has been said to have a debilitating and destructive effect on the juvenile's perception of our judicial system and works to deprecate rehabilitation." We went on to quote from *In re Gault,* 387 U.S. 1, 26 (1967), where the Supreme Court rejected the notion that informality in such proceedings is beneficial to the juveniles involved.

> [Studies] suggest that the appearance as well as the actuality of fairness, impartiality and orderliness—in short, the essentials of due process—may be . . . more impressive and more therapeutic [than informality] so far as the juvenile is concerned. . .. "Unless appropriate due process of law is followed, even the juvenile who has violated the law may not feel that he [or she] is being fairly treated and may therefore resist the rehabilitative efforts of court personnel."
>
> .. . .
>
> In *Kent v. United States* [, 383 U.S. 541, 554 (1966),] we. . .said that "the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness." With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth, we said that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." *Gault,* 387 U.S. at 30 [footnotes omitted].

We acknowledge that this is not a case like *Gault, Kent,* or even *B.L.P.* The point is, however, that each of those courts has recognized the importance of formal process, even "ceremony," in juvenile court procedures. Indeed, "rehabilitation through informality" was an early "dream" of the juvenile law which was never realized—particularly in delinquency cases. Wisconsin Juve-

nile Court Practice at 2 (M. Melli, ed. 1983). "Instead, informality often bred arbitrariness," and courts and legislatures soon turned to the criminal law for guidance in replacing that informality with court procedures designed to secure the goals of due process. *Id.*

In sec. 48.355(6)(a), Stats., the Wisconsin Legislature, in undeniably plain terms, conditioned the imposition of sanctions for violation of the conditions of dispositional orders on the in-court explanation of those conditions by the juvenile court judge. And, as we have said, we are unable to read the statute as authorizing the court to delegate that duty to others or to substitute other procedures for imparting the necessary information to the juvenile.

Our holding in this case is not, as the state suggests in its brief, one elevating form over substance to the detriment of the already-too-busy juvenile court system. It is simply a decision implementing the plain language of the legislature, as we are bound by law to do.

*By the Court.*—Order reversed.