*593 ¶ 70.
ANN WALSH BRADLEY, J.
(dissenting). The public policy and safety considerations involved in allowing weapons on a city bus may be hotly debated, but those issues are not before the court. Nor is the complexity of the constitutional right to bear arms at issue here. This case presents a straightforward question of statutory interpretation.
¶ 71. The issue here is whether Wis. Stat. § 66.0409 preempts a rule adopted by the City of Madison's Transit and Parking Commission that prohibits a person from traveling on a city bus with a weapon (the "bus rule").
¶ 72. Judicial restraint requires that courts "assume that the legislature's intent is expressed in the statutory language" chosen by the legislature. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. And that is exactly what the circuit court and a unanimous court of appeals did here.
¶ 73. Applying a plain meaning interpretation, both courts determined that the bus rule is not preempted by state statute. They concluded that the plain meaning of Wis. Stat. § 66.0409 (the "Preemption Statute") clearly limits preemption to municipal "ordinances" and "resolutions" enacted or adopted by a "city, village, town or county." See Wis. Stat. § 66.0409(1)(b) & (2).[1] Further they determined the bus rule is neither an "ordinance" nor a "resolution," and it was not enacted by the city. That should be the end of the analysis.
¶ 74. A majority of this court, however, fails to exercise the same restraint. Discarding seminal rules *594 of statutory interpretation, the majority slips into legislative mode, and ignores the plain meaning of the words chosen by the legislature. It rewrites the statute in a manner it wishes the legislature had chosen, a manner chosen by several other states—but not Wisconsin.
¶ 75. The majority evinces a further lack of judicial restraint when it reaches out to address constitutional issues not raised or briefed by the parties.
¶ 76. Contrary to the majority, I agree with the circuit court and the court of appeals that the legislature meant what the words of the statute clearly provide. The rule adopted by the City of Madison's Transit and Parking Commission that prohibits a person from traveling on a city bus with a weapon is not preempted by state statute.
¶ 77. Accordingly, I respectfully dissent.
I
¶ 78. As a harbinger of things to come, the majority begins its analysis not with the statute to be examined, but with a discussion of the Second Amendment of the United States Constitution, examining the constitutional right to bear arms. Majority op., ¶¶ 8-12.
¶ 79. Cases that turn on statutory interpretation generally begin the analysis by setting forth the text of the statute. For example, in the first paragraph of its analysis, the petitioner's brief sets forth the relevant statute in full. Following suit, the City likewise presents front and center the statute to be examined, setting it forth in full in the second paragraph of the briefs analysis. But where is the Preemption Statute set forth in full in the majority's analysis? Nowhere.
*595 f 80. This omission underscores that the majority's statutory interpretation is less about the text of the statute and more about lengthy and intertwining legal arguments. The absence obscures the ability to compare the plain text of the statute with the majority's interpretation of it. Wisconsin's Preemption Statute, Wis. Stat § 66.0409(2), provides:
[With exceptions not relevant here], no political subdivision may enact or enforce an ordinance or adopt a resolution that regulates the sale, purchase, purchase delay, transfer, ownership, use, keeping, possession, bearing, transportation, licensing, permitting, registration or taxation of any knife or any firearm or part of a firearm, including ammunition and reloader components, unless the ordinance or resolution is the same as or similar to, and no more stringent than, a state statute.
Additionally, Wis. Stat. § 66.0409(l)(b) defines "political subdivision" as "a city, village, town or county."
¶ 81. It is noteworthy that when the majority does reach the issue actually before this court, it claims to be engaging in a plain meaning interpretation. Yet, its plain meaning interpretation does not come close to tracking the words of the statute it is examining.
¶ 82. The majority determines that "the plain meaning of the [Preemption] Statute is that the legislature withdrew from the City's governing body all authority to legislate on the . . . 'possession, bearing [or] transportation ... of any knife or any firearm' unless the legislation is 'the same as or similar to, and no more stringent than, a state statute.'" Majority op., ¶[ 28 (citation omitted).
¶ 83. In reaching this "plain meaning" interpretation of the statute the majority discards seminal *596 rules of statutory interpretation, slips into legislative mode, and re-writes the statute the way it wishes the legislature would have written it. I address each in turn.
A
¶ 84. Although it pays lip service to seminal rules of statutory interpretation set forth in Kalal, 271 Wis. 2d 633, one wonders what is left of those rules after reviewing the majority's truncated exposition of a plain meaning interpretation.
¶ 85. When Kalal was decided, essentially two approaches to statutory interpretation had evolved. One approach was more holistic and inquired what was meant by the statute. Another focused on the words of the statute chosen by the legislature and instructed that the words be given their plain meaning. The majority in Kalal adopted the latter textual approach.
¶ 86. Curiously, the majority in this case appears to backtrack from the majority's approach in Kalal. Rather than inquire what the text does provide, the majority here asks what does the statute mean. It even supplies emphasis in the original, underlying "meaning" as an apparent shorthand signal of a reinvigorated holistic approach. Majority op., ¶ 20. After explaining that to be bound by the words of the statute chosen by the legislature would render it a mechanical and mere "arbiterD of word choice," the majority emphasizes "[i]t is, instead, the 'plain meaning' of a statute we must apply." Id., ¶¶ 19-20.
¶ 87. In the majority's search for meaning, it discards seminal rules of statutory interpretation that emphasize the primacy of the words chosen by the *597 legislature. Brushed aside are rules that require an interpretation using the statutory common and ordinary meaning of those chosen words as well as an examination of those words in the statutory context in which they are used. The majority's departure from these seminal rules includes those set forth below.
¶ 88. First, "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." Kalal, 271 Wis. 2d 633, ¶ 44. As noted above, the majority asserts that it is not the words of the statute that are significant, but the "plain meaning" of a statute that must be applied. Majority op., ¶ 20.
• "We must, however, keep in mind that this axiom [to apply the plain meaning of the statute] does not reduce the judicial function to mechanically comparing the words of a statute to the name given a legislative enactment, or the body enacting it." Majority op., ¶ 19.
• "We are not merely arbiters of word choice. If we were, we would need do nothing more than confirm that 'rule' is a word different from 'ordinance' and 'resolution,' and that 'commission' is etymologically distinct from 'city,' 'village,' 'town,' and 'county.'" Id., ¶ 19.
¶ 89. Second, "statutory interpretation begins with the language of the statute." Kalal, 271 Wis. 2d 633, ¶ 45 (internal quotations and citations omitted). The majority opinion does not set forth the full text of the statute anywhere in its statutory analysis, which obscures a comparison to the text of the statute with the majority's "plain meaning" interpretation of it. Rather than beginning its analysis with the language *598 of the statute, it begins with a discussion of the Second Amendment. Majority op., ¶¶ 8-12.
¶ 90. Third, "[statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶ 45. Although the majority accurately quotes Cross v. Soderbeck, 94 Wis. 2d 331, 342, 288 N.W.2d 779 (1980), which defines the common and ordinary meaning of both "ordinance" and "resolution," it declines to apply the common and ordinary meaning to those terms.[2] Majority op., ¶¶ 24-28.
¶ 91. Instead, the majority superimposes on Ka-lal a new approach. It creates alternative interpretive principles, including examining the ordinance's "taxonomy functionally." Majority op., ¶ 25. Ultimately, it arrives at a plain meaning interpretation based on these principles.
• The majority "derive[s] three principles useful to our inquiry": (1) "ordinances are municipal legislative devices, formally enacted, that address general subjects in a permanent fashion"; (2) "resolutions are those informal municipal legislative acts that address particular pieces of administrative *599 business in a temporary fashion"; and (3) "the label given to a legislative device is not dispositive—one identifies the device's taxonomy functionally." Majority op., ¶ 25.
• "Thus, the plain meaning of the [Preemption] Statute is that the legislature withdrew from the City's governing body all authority to legislate on the subjects it identifies .. ." Id., ¶ 28.
I 92. Fourth, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶ 46. The majority does not analyze the statutory context or language of closely-related statutes. Instead, it analyzes the result and reasons that the result is not what the legislature intended.
• "We examine the statute's contextualized words, put them into operation, and observe the results to ensure we do not arrive at an unreasonable or absurd conclusion." Majority op., ¶ 20.
¶ 93. The process that the majority employs in its plain meaning interpretation is one that is almost entirely disconnected from the actual language of the statute. Ultimately, it is apparent that in abandoning or reconfiguring seminal rules of statutory interpretation, the majority fails to honor the words chosen by the legislature.
B
¶ 94. Instead the majority dons its collective legislative hat and rewrites the Preemption Statute in a manner chosen by several other states—but not Wis *600 consin. The Wisconsin legislature could have, but did not, use expansive language intended to more broadly prohibit local agency regulation of firearms. In re Incorporation of Portion of Town of Sheboygan, 2001 WI App 279, ¶ 9, 248 Wis. 2d 904, 637 N.W.2d 770 ("It is presumed that the legislature is cognizant of what language to include or omit when it enacts laws.").
¶ 95. Other jurisdictions provide examples of how the Wisconsin legislature could have more broadly written its preemption statute. For example, in Kansas, the preemption statute prohibits the adoption of ordinances and resolutions, but also says that "no agent of any city or county shall take any administrative action" to regulate firearms. Kan. Stat. Ann. § 12-16,124(a) (2013).
¶ 96. A multitude of other states have done exactly what the Wisconsin legislature did not do, but what the majority wishes this legislature had done. See Va. Code Ann. § 15.2-915A (2012) (no agent of any locality "shall take any administrative action. . . "); Tenn. Code Ann. § 39-17-1314(a) (2014) (no city "shall occupy any part of the field of regulation . .. "); Mich. Comp. Laws § 123.1102 (2015) (no city shall "enact.. . any ordinance ... or regulate in any other manner"); Ark. Code Ann. § 14-16-504(b)(1)(A) (2011) (local governments "shall not enact any ordinance or regulation pertaining to, or regulate in any other manner. .. "); Fla. Stat. § 790.33(1) (2011) (preempting "any administrative regulations or rules"); Idaho Code § 18-3302J(2) (2014) ("no D city, agency, board or any other political subdivision.. . may adopt or enforce any law, rule, regulation, or ordinance, which regulates in any manner . . . "); Ky. Rev. Stat. Ann. § 65.870(1) (West 2012) (prohibiting a ban by "any person acting under the authority of any . .. organizationQ ... ").
*601 ¶ 97. The majority ultimately justifies its creative approach to statutory interpretation by emphasizing a desire to avoid an absurd result. Majority op., ¶ 46 n.31. However, it appears that the majority may be confusing a desire to avoid an absurd result with reaching a statutory interpretation it desires.
II
¶ 98. Contrary to the majority, I begin as our case law instructs, with the plain language of the statute. Kalal, 271 Wis. 2d 633, ¶ 45 ("[Statutory interpretation begins with the language of the statute.") (internal quotations and citations omitted). "If the meaning of the statute is plain, we ordinarily stop the inquiry." Id. We give statutory language its common, ordinary, and accepted meaning. Id. (citations omitted). Technical or specially-defined words or phrases are given their definitional meaning. Id. "[L]egislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶ 51 (citation omitted).
¶ 99. I agree with the City, the circuit court and a unanimous court of appeals that the statute plainly preempts only "ordinances" and "resolutions." Wisconsin Stat. § 66.0409(2) provides that "no political subdivision may enact or enforce an ordinance or adopt a resolution" that regulates the bearing of any firearm unless it is no more stringent than a statute:
[With exceptions not relevant here], no political subdivision may enact or enforce an ordinance or adopt a resolution that regulates the sale, purchase, purchase delay, transfer, ownership, use, keeping, possession, bearing, transportation, licensing, permitting, registration, or taxation of any knife or any firearm or part of a firearm, including ammunition and reloader com *602 ponents, unless the ordinance or resolution is the same as or similar to, and no more stringent than, a state statute.
¶ 100. The bus rule is not an "ordinance" or "resolution." A municipal "ordinance" is "a regulation of a general, permanent nature, enacted by the governing council of a municipal corporation ..." Cross, 94 Wis. 2d at 342. A "resolution" is an "informal enactment of a temporary nature, providing for the disposition of a particular piece of the administrative business of a municipal corporation." Id.
f 101. The meaning of the statute is plain and our inquiry may stop here. See Kalal, 271 Wis. 2d 633, ¶ 45. However, we also look to legislative history to confirm our plain meaning interpretation. Id., ¶ 51. Absent from the majority opinion is any discussion of the legislative history of the Preemption Statute. Likely it is absent because it supports an interpretation completely at odds with the majority's statutory interpretation.
¶ 102. As Justice Prosser's concurrence in State v. Cole, 2003 WI 112, ¶¶ 60-64, 264 Wis. 2d 520, 665 N.W.2d 328, explained, the Preemption Statute was enacted in 1995 to address gun control ordinances proposed by the cities of Milwaukee, Kenosha, and Madison. In response to these proposed ordinances, Representative DuWayne Johnsrud introduced legislation "to preempt municipalities from enacting gun control ordinances that were stricter than state law." Id., ¶ 64 (emphasis added).
¶ 103. Looking at how other states have interpreted similar statutory language also confirms our plain meaning interpretation. The Oregon court of appeals decision in Doe v. Medford Sch. Dist. 549C, 221 *603 P.3d 787 (2009) is instructive because of Oregon's analogous Preemption Statute, which prohibits only ordinances.[3] The Medford court reasoned that "the legislature intended the term 'ordinance' to refer to the equivalent of a law or other enactment of a municipal corporation that carries the force of law and is enforceable against the public generally." Id. at 792. Thus, Medford determined that a school district could issue a policy barring district employees from bearing arms on school district property despite its preemption statute, because it was not enforceable against the general public. Id. at 799.
¶ 104. Similar to the school district policy in Medford, the bus rule is not a generally-applicable legislative enactment like an ordinance. Bus policies are limited in scope and apply only to members of the public who choose to ride a Madison Metro bus. See also John E.D. Larkin, Guns in Government Parks & Buildings—Municipal Enforcement of Safety Rules Without Running Afoul of State Preemption, 86 Pa. B. Ass'n Q. 128, 137 (July 2015) ("government conduct does not rise to the level of 'regulation' when the government acts in its capacity as a private owner."); Wolfe v. Twp. of Salisbury, 880 A.2d 62, 69 (Pa. Commw. Ct. 2005) (township could ban hunting, despite a statewide preemption statute, in township parks because the township did not act to regulate *604 hunting throughout the municipality, but only on its own property). Like in Medford, the bus rule here is appropriately based on the agency's limited authority because it applies only to persons who choose to ride a Madison Metro bus, rather than to the general public.
f 105. Contrary to the majority, I conclude that the plain meaning of Wisconsin's Preemption Statute does not clearly preempt the bus rule. This plain meaning interpretation is confirmed by the legislative history and informed by examining the interpretation given to similar language.
f 106. Additionally, the plain meaning interpretation set forth in this dissent is consistent with that previously rendered by the Wisconsin Attorney General. It is conspicuous by its absence from the majority's analysis. After the Vehicle Statute was amended, see 2011 Wis. Act 35, § 31, the Attorney General opined that "public and private entities may prohibit or restrict the possession and transport of weapons."[4] I agree.
i—i f—1 h-M
¶ 107. Having determined that the legislature meant what it said in the text of the Preemption Statute, the statutory interpretation exercise may come to an end. Accordingly, there is no need to address whether the bus rule is more stringent than state law, when it is not preempted by state law. I pause, however, to briefly comment on the observation set forth at the outset of this dissent.
*605 ¶ 108. The majority strays far afield from the question of statutory interpretation presented here by beginning its analysis with a discussion about the right to bear arms under the Second Amendment to the United States Constitution. Majority op., ¶¶ 8-12. It contends that this summary discussion of the Second Amendment provides context and background for the statutory analysis. Id., ¶ 8 n.10.
f 109. However, both parties repeatedly advised the court that this case, as presented, has nothing to do with the constitutional right to bear arms. The parties intentionally and strategically framed this case as a case of statutory interpretation only. Nevertheless, the majority evinces a further lack of judicial restraint when it reaches out to address constitutional issues not raised or briefed by the parties.
¶ 110. A litany of refrains makes clear that it is the position of the parties that the constitutional right to bear arms is not implicated here, either under the United States Constitution or the Wisconsin Constitution. Counsel for Wisconsin Carry repeatedly stated:
• "... We could have brought that issue (the constitutional right to bear arms on a city bus), we didn't. I am not here today to argue it."
• "We did not raise any constitutional issues in this case."
• "No, we did not raise any constitutional issues."
• "We did not bring any state or federal constitutional issues in th[is] case."
Counsel for the City agreed:
• "Well there's a reason the petitioners didn't raise any constitutional issues in this case. And one of them is [that] the Vehicle Statute has been in play since before Act 35."
*606 • "There [have] been no constitutional issues in this case."
¶ 111. Undaunted by counsel's protestations to the contrary, the majority embarks on a discussion of the Second Amendment. It observes the "extensive textual and historical analysis" employed by the court in D.C. v. Heller, 554 U.S. 570, 592 (2008), and notes that the Wisconsin Constitution has very distinctive language from that contained in the United States Constitution. Majority op., ¶ 10. Without any analysis, the majority then declares that the Wisconsin right to bear arms is also fundamental and is an "individual right." Id.
¶ 112. The lack of nuance in the majority's declaration underscores the folly in reaching out to discuss constitutional issues not presented, briefed or argued. For example, the majority's discussion of a "pre-existing" fundamental right may suggest that such a right is absolute. See majority op., f 9. However, as counsel for the City stated at oral argument, the Second Amendment right to bear arms "is not an absolute right. It's subject to reasonable restrictions. And for years, the State had a restriction against carrying guns in vehicles and it's been articulated in cases what the safety reasons for that [are]."
¶ 113. In Heller, the United States Supreme Court explained "[l]ike most rights, the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. The Heller court further observed that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. (citations omitted).
*607 f 114. This is the same lack of nuance that Justice Prosser warned against in Cole, 264 Wis. 2d 520, ¶¶ 60-79, (Prosser, J., concurring), which was the first time our court interpreted the new Wisconsin Constitutional Amendment on the right to bear arms. Justice Prosser explained that the amendment requires a "nuanced interpretation." Id., ¶ 60. Tracing the legislative history and changes in the text of the proposed amendment as it worked its way through the initial legislative process, he made clear that merely labelling the right "fundamental" was insufficient. Id., ¶¶ 60-79.
¶ 115. Justice Prosser's concurrence in Cole cautioned that the Second Amendment right to bear arms in the Wisconsin Constitution "is not a fundamental right in the same sense that freedom of speech, freedom of worship, the right to remain silent, and the right to a jury trial are fundamental rights." Id., ¶ 79. Additionally, the concurrence emphasized the need for nuance when examining the individual nature of the constitutional right. It clarified that the choice of the wording "the people" at the beginning of the amendment to the Wisconsin Constitution was intended to de-emphasize the nature of the individual right:
First, although the legislature wanted to establish a right that would benefit hundreds of thousands of individual gun owners, it wanted to deemphasize the 'individual' nature of this right. The original amendment provided that 'Every individual, except an individual restricted in accordance with federal law, has the right to keep and bear arms . . . but the manner of bearing arms maybe regulated []'... By removing this limiting clutter from the draft, the legislature removed any impediment to a reasonable exercise of the police power. By shifting the right from 'Every individual' to 'The people,' the amendment underlined the fact that *608 the police power in Wisconsin may reasonably restrict specific individuals and classifications of people (e.g domestic abusers, minors) in ways that it may not restrict the people as a whole.
Id., ¶ 77.
¶ 116. The majority's far reaching constitutional discussion also tackles the Wisconsin Home Rule Amendment, art. XI, § 3, although neither party briefed or argued the issue.[5] In fact neither party even cites it in passing in their briefs. Admittedly, the non-party amicus does cite to this constitutional provision, but then clarifies that "[i]n creating the [bus] Rule, Madison did not rely upon the Home Rule Amendment, so the issue is whether the Rule is preempted under statutory [not constitutional] home-rule analysis."
¶ 117. Having raised the Home Rule Amendment, the majority then fails to consider the amendment when analyzing the scope of municipal authority. Perhaps as a result, the majority makes some broad statements about the scope of authority of municipalities without nuance or substantiation.
¶ 118. The majority's broad statements appear to sub silentio eviscerate the constitutional potency of the Home Rule Amendment. For example, it proclaims that "if the City has no legislative authority with *609 respect to that subject, it necessarily has nothing to delegate to its divisions." Majority op., ¶ 23; see also id., ¶ 28 ("Because a municipality cannot delegate what it does not have, the City is entirely powerless to authorize any of its sub-units to legislate on this subject.").
¶ 119. Adopted in 1924, the Home Rule Amendment was meant to give local government significant powers separate from those bestowed through legislative enactments. Because Home Rule powers derive from the Wisconsin Constitution and not from the Wisconsin legislature, there are limits on the legislature's ability to circumscribe municipal authority through legislative enactments. Yet, the majority's analysis fails to account for such possible limitations.

IV

¶ 120. For the reasons set forth above, I conclude that the Preemption Statute does not apply to the bus rule because it is not an ordinance or resolution enacted by the City. Judicial restraint requires that this court "assume that the legislature's intent is expressed in the statutory language" chosen by the legislature. See Kalal, 271 Wis. 2d 633, ¶ 44. "It is the enacted law, not the unenacted intent, that is binding. ..." Id.
¶ 121. Accordingly, I respectfully dissent.
¶ 122. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 The majority opinion refers to this same statute as the "Local Regulation Statute." Like the court of appeals, I use the term "Preemption Statute."

 Cross v. Soderbeck, 94 Wis. 2d 331, 342, 288 N.W.2d 449 (1980) (citations omitted) provides:
A municipal ordinance or by-law is a regulation of a general, permanent nature, enacted by the governing council of a municipal corporation. ... A resolution, or order as it is sometimes called, is an informal enactment of a temporary nature, providing for the disposition of a particular piece of the administrative business of a municipal corporation. .. . And it has been held that even where the statute or municipal charter requires the municipality to act by ordinance, if a resolution is passed in the manner and with the statutory formality required in the enactment of an ordinance, it will be binding and effective as an ordinance.

 Oregon's Preemption Statute, Or. Rev. Stat. § 166.170(2) (2016), provides:
Except as expressly authorized by state statute, no county, city or other municipal corporation or district may enact civil or criminal ordinances, including but not limited to zoning ordinances, to regulate, restrict or prohibit the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms . . . Ordinances that are contrary to this subsection are void.

 Wisconsin Department of Justice, Wisconsin's Carrying Concealed Weapon Law Questions and Answers 45 (June 1, 2013), https://www.doj.state.wi.us/sites/default/files/dles/ccw/ ccw-faq.pdf.

 Wisconsin's Home Rule Amendment provides in relevant part:
Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.
Wis. Const. art. XI, § 3(1).