Richard J. HEITKEMPER, Petitioner-Respondent,

v.

Wayne WIRSING, Sheriff, Price County, Wisconsin,
Respondent-Appellant.

Supreme Court

*No. 94–0221. Oral argument January 25, 1995.—Decided
June 26, 1995.*

(Also reported in 533 N.W.2d 770.)

For the respondent-appellant there were briefs by *Robert W. Burns* and *Godfrey & Kahn, S.C.,* Green Bay and oral argument by *Robert W. Burns.*

For the petitioner-respondent there was a brief by *Gordon E. McQuillen* and *Cullen, Weston, Pines & Bach,* Madison and oral argument by *Gordon E. McQuillen.*

WILLIAM A. BABLITCH, J. Wayne Wirsing, sheriff of Price County at the commencement of this action, appeals from a judgment of the circuit court. The court ordered Wirsing to reinstate Richard Heitkemper as a deputy sheriff of Price County (County) in accordance with the collective bargaining agreement between the County and the deputies' union. Wirsing contends that the collective bargaining agreement usurps his constitutional and statutory authority to appoint a deputy. We conclude that the issue in this case is not whether a collective bargaining agreement can usurp Wirsing's power to appoint a deputy, but rather whether it may limit his ability to dismiss and demote one. Because neither Wirsing's power to dismiss nor demote a deputy is constitutionally protected and because the collective bargaining agreement does not conflict with Wirsing's statutory powers under secs. 59.21(1) and (4), Stats., the agreement is valid and enforceable. Accordingly, we affirm.

The facts are these. Wirsing was re-elected as sheriff of Price County in November, 1992. His opponent in that election, Heitkemper, had been a Price County sheriff's deputy for 20 years, and twice before had run unsuccessfully against Wirsing for the office of sheriff. On January 15, 1993, Wirsing informed Heitkemper that he would not be reappointed as deputy for Wirsing's new term beginning January 4, 1993. He advised Heitkemper that he would be suspended with pay for the duration of any grievance proceeding initiated by Heitkemper to dispute the termination.

On that same day, Heitkemper filed a grievance with the Price County Personnel Committee pursuant to the collective bargaining agreement in place between Price County and the deputies' union. Heitkemper alleged that he was dismissed without just

185

cause as required by the collective bargaining agreement.

Wirsing filed a grievance answer form contending that his decision not to deputize Heitkemper was an exercise of his statutory authority and that such authority did not require a finding of just cause or entitle Heitkemper to any procedural hearing. Wirsing also added that his decision was not a "disciplinary termination" to which the collective bargaining agreement applied.

Five weeks later, on February 23, 1993, Wirsing filed a complaint against Heitkemper with the Price County Personnel Commission. In the complaint Wirsing explained that he did not waive his right to refuse to deputize Heitkemper, but was filing the complaint in an effort to accommodate Heitkemper's grievance; he believed the complaint would provide independent reasons for Heitkemper's dismissal. In his complaint, Wirsing itemized a number of job performance criticisms of Heitkemper, asserting that Heitkemper's prior acts would merit disciplinary action under the collective bargaining agreement. Some of the criticisms related to incidents dating back several years. Others, more serious, involved matters performed by or assigned to Heitkemper in 1992. Heitkemper, however, had received no prior disciplinary action for any of the incidents complained of by Wirsing. The County Personnel/grievance committee (hereinafter "grievance committee")[1] consolidated the

---

[1] Section 59.21(8)(a), Stats., provides that a county may, by ordinance, adopt employee grievance procedures. Those procedures are set forth in sec. 59.21(8)(b). It is conceded by the parties that Price County has adopted such an ordinance.

Pursuant to sec. 111.70, Stats., Price County and the deputies union entered into a collective bargaining agreement which

hearings on Heitkemper's grievance and Wirsing's complaint. The committee found there was just cause, based on several counts in Wirsing's complaint, to order that Heitkemper be suspended without pay for 65 days. The committee also ordered Wirsing to reinstate Heitkemper to his former position as investigator after the 65 days and at the same rate of pay he had received prior to the suspension. The order further concluded that if Heitkemper's job performance was unsatisfactory to Wirsing, he would be demoted to deputy.

On July 1, 1993, four days before Heitkemper's 65 day suspension was to end, Wirsing sent a letter to the County and to Heitkemper advising that he would not reappoint Heitkemper as a deputy. Wirsing cited his constitutional authority as an elected officer and his statutory power to appoint deputies as grounds for his refusal to comply with the committee order.

Heitkemper petitioned the circuit court for a writ of mandamus ordering Wirsing to comply with the grievance committee order to reinstate Heitkemper. During the pendency of the mandamus proceedings, Heitkemper was employed by Price County. The County interpreted the collective bargaining agree-

---

also sets forth grievance procedures for Price County deputies. The County Personnel Committee is designated to resolve grievances under the collective bargaining agreement.

Rather than holding two separate hearings before the grievance committee pursuant to sec. 59.21(8)(b), Stats., and the County Personnel Committee pursuant to the collective bargaining agreement, the County and the deputies union agreed that there would be one hearing before the County Personnel Committee; the Personnel Committee acted as both the committee under the collective bargaining agreement and the grievance committee under sec. 59.21(8).

187

ment and the order of the grievance committee to require Heitkemper's reinstatement to his former employment and to his former salary. Because the County was obligated to pay Heitkemper under the collective bargaining agreement, it created a temporary position as county child support investigator for him until the matter was resolved.

The circuit court granted the writ and Wirsing appealed. The court of appeals certified Wirsing's appeal to this court and we accepted certification.

## I.

The first issue we address is whether the collective bargaining agreement can limit Wirsing's power to dismiss Heitkemper from his employment as deputy. To resolve this issue we first determine whether Wirsing's authority to dismiss Heitkemper is constitutionally protected. If so, it cannot be limited by a collective bargaining agreement.[2] *Professional Police Ass'n v. Dane County (WPPA I),* 106 Wis. 2d 303, 317, 316 N.W.2d 656 (1982).

The Wisconsin Constitution provides that sheriffs shall be chosen by the electors of the respective counties once every two years and as often as vacancies happen. Wis. Const. art. VI, sec. 4. Because the Constitution, however, does not define the powers, rights or duties that belong to the office of sheriff, this court has attempted to do so since 1870. In *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 415 (1870), this court deter-

---

[2] Heitkemper was elected to the office of sheriff on Nov. 8, 1994. Therefore, this case is moot. However, the sheriff's power to terminate and demote a deputy are important issues that are likely to recur in the future. Therefore, we consider the issues in this review. *See State ex rel. La Crosse Tribune v. Circuit Ct.,* 115 Wis. 2d 220, 229, 340 N.W.2d 460 (1983).

mined that the custody of the common jail and the prisoners therein was a constitutionally protected function of the sheriff and as such could not be transferred to another office by the legislature. In defining those constitutionally protected powers as powers which existed at the common law, the court stated:

> [T]he framers of the constitution had reference to the office [of sheriff] with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted. *Id.* at 414.

Fifty years later this court decided *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920), which sustained the validity of a statute making a civil service law applicable to the appointment of sheriff's deputies and requiring the sheriff to abide by an order of the civil service commission to reinstate a dismissed deputy. The court rejected any interpretations of *Brunst* which tried to include within the constitutionally protected functions of the sheriff all powers held by the sheriff at the common law. Rather, the court indicated that the test for determining which functions were constitutionally protected was more exacting:

> With no disposition to question the doctrine of that case, we do not think it should be extended to the extent here urged. We think it should be confined to those immemorial principal and important duties that characterized and distinguished the office. While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a

189

general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the constitution prohibits any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment would be necessary in order to change the duties of sheriffs in the slightest degree and, in this respect, "the state would be stretched on a bed of Procrustes." *Id.* at 482.

*Buech* was followed in 1981 by *WPPA I,* 106 Wis. 2d at 317, in which the court held that the legislature could not constitutionally authorize a collective bargaining agreement which deprived the sheriff of his constitutional authority to choose who among his deputies should act as court officer. Although the *WPPA I* court further held that attendance on court was in the same category of powers inherent in the office of sheriff as running a jail, it remanded to the circuit court to determine the precise nature of the court officer's job. *Id.* at 319. The court emphasized that, "[i]t is the nature of the job assigned rather than the general power of job assignment which must be analyzed in light of the sheriff's constitutional powers." *Id.* at 312.

The court continued in its analysis in the event it was determined that the power conferred on court officer's was derived solely from statute. In that case, the court concluded, the sheriff's power could be limited by a collective bargaining agreement if the agreement could be harmonized with the sheriff's statutory authority to appoint deputies under sec. 59.21(1), Stats.

Most recently, in *Manitowoc County v. Local 986B,* 168 Wis. 2d 819, 830, 484 N.W.2d 534 (1992), in a per

curiam opinion, the court determined that "maintaining law and order" and "preserving the peace," are constitutionally protected powers of the sheriff that may not be limited by a collective bargaining agreement. In *Manitowoc,* an arbitrator concluded that a sheriff could not appoint a deputy to a newly created undercover drug enforcement position without first posting the position as required by the collective bargaining agreement between the union and the County. The court of appeals agreed on the basis that under *Buech* only those powers "unique" to the office of sheriff at the common law were constitutionally protected.

This court reversed the court of appeals' decision. It began by rejecting the court of appeals' interpretation of *Buech:*

> While the creation of a "uniqueness" requirement may in this case promote broad collective bargaining rights and arbitration, our prior cases clearly establish that the "immemorial principal and important duties" of the sheriff at common law are constitutionally protected regardless of their uniqueness. *Id.* at 823–24.

However, contrary to Wirsing's assertion, the court did not *sub-silentio* overrule *Buech* or reject the per se rule in *Buech* that the power to appoint deputies is not constitutionally protected. Rather, the *Manitowoc* court adhered to the language in *Buech* and reaffirmed the holding therein:

> A more logical reading of *Buech* is that only those duties which "gave character and distinction" to the office of sheriff at common law are constitutionally protected, and that the power of appointing deputies, being rather mundane and commonplace, did

191

not give character and distinction to the office of sheriff at common law. *Id.* at 826–27.

Using the test distilled from *Buech,* the court concluded that maintaining law and order and preserving the peace were activities which gave "character and distinction" to the office of the sheriff. *Id.* at 829–30. Since by its nature, the undercover drug investigator's job involved those activities, the assignment of such activities could not be limited by a collective bargaining agreement. *Id.* at 830. The court underscored, however, that its holding was limited to the facts of the case:

> The legislature may still regulate the administrative and executive duties of a sheriff, and the collective bargaining agreement will still control wages, hours and conditions of employment. Where the courts eventually decide to draw the line regarding which activities of a sheriff involve law enforcement and preserving the peace such that they are constitutionally protected is not at issue here; the focus here is on the job assigned—undercover detective work—and undercover detective work is part of a modern sheriff's traditional and historical duties of law enforcement and preserving the peace. *Id.* at 831.

In the face of this preceding case law, Wirsing contends that this court's most recent decision of *Manitowoc* requires us to reverse the circuit court. He contends that because all deputies in Price County are conferred law enforcement and peace preserving duties, the power to refuse to reappoint Heitkemper as deputy is constitutionally protected and cannot be limited by a collective bargaining agreement.

*Manitowoc* does not dictate the result urged by Wirsing. In *Manitowoc,* we focused on the sheriff's

192

power to assign a deputy currently employed in the sheriff's office to a particular position which involved peace preserving and law enforcement activities. We held that the assignment was constitutionally protected in light of the nature of the job assigned, and as such, could not be limited by a collective bargaining agreement. Our holding was narrow, and we refused to extend it beyond the specific facts of the case.

This is not a case involving the assignment of a current deputy to a particular law enforcement task. This case involves a sheriff's ability to dismiss a deputy who has been a deputy for 20 years. Accordingly, this case is analogous to *Buech*. *Buech* held that the power to appoint deputies was not constitutionally protected and thus a civil service commission could order the sheriff to reinstate a dismissed deputy. We extend *Buech*'s holding to its logical conclusion: the power to dismiss an already appointed deputy is not constitutionally protected. While internal management and administrative duties such as termination are important, they neither gave "character" nor "distinction" to the office of sheriff. Rather, these duties, specifically the power to dismiss, fall within the mundane and common administrative duties of a sheriff which may be regulated by the legislature. *See Manitowoc,* 168 Wis. 2d at 831 ("The legislature may still regulate the administrative and executive duties of a sheriff, and the collective bargaining agreement will still control wages, hours and conditions of employment.").

## II.

Having concluded that the power to dismiss Heitkemper is not constitutionally protected, we must

193

determine whether the collective bargaining agreement, which limits Wirsing's authority to dismiss Heitkemper, conflicts with his statutory powers under secs. 59.21(1) and (4), Stats. In doing so, we are instructed to harmonize them if possible, although we may not interpret a collective bargaining agreement to authorize a violation of law. *See Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis. 2d 90, 106, 264 N.W.2d 594 (1978).

Sections 59.21(1) and (4), Stats.,[3] provide:

> **(1)** ... Within 10 days after entering upon the duties of the office of sheriff, the sheriff shall also appoint deputy sheriffs for the county . . ..
>
> . . .
>
> **(4)** A person appointed undersheriff or deputy for a regular term or to fill a vacancy or otherwise shall hold office during the pleasure of the sheriff.

Wirsing contends that these statutory provisions cannot be harmonized with the collective bargaining agreement, to which he is not a party, and which purports to regulate his ability to appoint deputies. The power to appoint deputies, he argues, is conferred solely to him under secs. 59.21(1) and (4) and as such cannot be collectively bargained by the County. He maintains that the provisions above confer to him the unfettered authority to appoint his deputies at the beginning of each two-year term and the unfettered authority to refuse to reappoint them after his two-year term in office is complete. That is, Wirsing argues that the statute gives him the unbridled authority to hire and fire deputies at will every two years. His refusal to

---

[3] Section 59.21, Stats., was amended in 1993. The amended sections do not apply to this appeal.

reappoint Heitkemper to another term of office, he maintains, is consistent with this authority.

Wirsing concedes, however, that his construction of secs. 59.21(1) and (4), Stats., seems to contradict another provision of sec. 59.21 which appears to protect a deputy's employment while that deputy exhibits good behavior. Section 59.21(8)(b) provides in part:

> 1. The persons appointed shall hold the office of deputy sheriff on good behavior. In any county operating under this subsection . . . whenever the sheriff, or undersheriff or a majority of the members of a civil service commission for the selection of deputy sheriffs believes that a deputy has acted so as to show the deputy to be incompetent to perform the duties of deputy sheriff or to have merited suspension, demotion or dismissal, the sheriff, undersheriff or civil service commission shall report in writing to the grievance committee setting forth specifically the complaint against the deputy, and when the party filing the complaint is a sheriff or undersheriff, may suspend or demote the officer at the time such complaint is filed. [The statute continues setting forth the procedure for a grievance including reinstatement if the charges are not well founded.]

Wirsing resolves this contradiction by arguing that while sec. 59.21(8)(b) and the provisions of a collective bargaining agreement govern conditions of employment and may regulate his power to dismiss a deputy during the two-year term of the deputy, they do not apply to the sheriff's decision to reappoint the deputy once that two-year term is complete. Further, while the collective bargaining agreement may force the County to retain the deputy on the county payroll, the sheriff

195

has no duty to reappoint him. In short, he argues, conditions of employment are distinct from deputization.

Heitkemper, on the other hand, disagrees. He points to *Cross v. Soderbeck,* 94 Wis. 2d 331, 339, 288 N.W.2d 779 (1980), which says:

> Under sec. 59.21(4), a deputy sheriff is to hold office "during the pleasure of the sheriff." Sub. (8) of sec. 59.21 permits a county to place the deputy sheriff position under civil service and thereby limit the power of the sheriff to hire and fire deputies and regulate hours of employment and tours of duty.

Consistent with *Cross,* he contends that sec. 59.21(8)(b), Stats., indicates that the sheriff cannot fire at will a deputy appointed under sec. 59.21(1), but must retain the deputy if the deputy exhibits good behavior. Such limit on the sheriff's power to dismiss, he maintains, exists regardless of whether the sheriff's present two-year term is complete. In fact, Heitkemper contends that because he is afforded civil service protection under sec. 59.21(8) and is a party to the collective bargaining agreement, he is not an at-will employee, *see Vorwald v. School Dist. of River Falls,* 167 Wis. 2d 549, 557, 482 N.W.2d 93 (1992) (holding that absent a law or collective bargaining agreement, a municipal employee is an employee at-will), but retains a property interest in his or her employment. As support, Heitkemper cites to *Heideman v. Wirsing,* 7 F.3d 659, 663 (7th. Cir. 1993), which recognized, in dicta, that only probationary deputies not covered by a collective bargaining agreement are employees at-will:

> Deputies are often protected from summary dismissals by collective bargaining agreements or by statute. See, e.g., Wis.Stat. 59.21(8)(b)1; . . .. For example, Heitkamper [sic], a deputy of long stand-

ing in Price County protected by the local collective bargaining agreement, retained his post as a deputy sheriff after his unsuccessful challenge to Wirsing. Since politicking is not just cause for discharge, only probationary deputies, who are treated as at-will employees, are subject to dismissal under these circumstances.

■

Our task is to harmonize these apparently conflicting statutory provisions. We can discern but one way to do so. We believe sec. 59.21(8)(b), Stats., conveys the legislative intent to treat deputies appointed under sec. 59.21(1) as more than employees at-will who can be fired every two years by the sheriff. Rather, sec. 59.21(8)(b) indicates that deputies have tenure beyond the initial appointment while they hold office on good behavior. Under this construction of sec. 59.21, the sheriff has the power to make the initial appointment of a deputy pursuant to subsection (1). Under subsection (4), the deputy serves at the pleasure of the sheriff; that is, if the sheriff determines that a deputy is not exhibiting good behavior under subsection (8)(b)1, he or she has the power to suspend the deputy with pay and initiate termination proceedings against him or her according to sec. 59.21(8)(b), or the collective bargaining agreement. *See infra* p.3 n.1. Ultimately, the grievance committee determines whether the sheriff's discipline or dismissal is justified. In sum, the statute affords the sheriff the power to appoint a deputy, when there is a vacant position in the department, but under sec. 59.21(8)(b), it limits his ability to dismiss a deputy by providing to the deputy civil service protections with regard to conditions of employment including termination.

■

If we did not afford the statute this construction, we would be left with absurd results. We avoid construing a statute so as to produce absurd results. *Estate of Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965). Under Wirsing's theory, the sheriff would possess the authority to remove all of the existing deputies in his county each time the sheriff is re-elected. Under this same theory, each time a new sheriff takes office he or she could do the same. Wirsing concedes that, although unlikely, this result could theoretically occur. He also concedes that if this across the board hire and fire were to occur in a county with 300 deputies governed by a collective bargaining agreement the County might be required to retain those deputies as employees on its payroll even though they are not allowed to work in the sheriff's office. In fact, Wirsing acknowledges that this situation has occurred here with Heitkemper: the County retained Heitkemper in a temporary position outside the sheriff's office at deputy's wages.

This kind of grant of unbridled power to the sheriff does not only threaten the county coffers, it threatens the quality of law enforcement in the counties. Allowing a sheriff to dismiss a deputy at will every two years will discourage qualified candidates from seeking the position of deputy sheriff. Surely a candidate who has scored sufficiently high to be one of the top three finalists on the county examination and has undergone extensive training for the position would expect more than a two-year tenure. *See* sec. 59.21(8)(a), Stats. If the expectation depended on the graces of the sheriff, however, the office of deputy would become totally a political one. Deputies would be forced to offer political support to the sheriff in office and ultimately, could face losing their jobs if they

198

refused or if they placed themselves on the ballot. This in turn would diminish the professional law enforcement protection provided to citizens of the counties.

Although Wirsing acknowledges the concerns highlighted above, he relies on *Iowa County v. Iowa County Courthouse,* 166 Wis. 2d 614, 480 N.W.2d 499 (1992), and *Crawford County v. WERC,* 177 Wis. 2d 66, 501 N.W.2d 836 (Ct. App. 1993), to argue that the lack of job security for deputy sheriffs is similar to that of other public officials.

In *Iowa County,* the court held that a collective bargaining agreement could not usurp the power of the circuit court judge to appoint a register in probate. *Id.* at 621. The statute at issue in *Iowa* was sec. 851.71, Stats., which provided, "the judges of the county shall appoint . . . a register in probate." The collective bargaining agreement at issue required the judge to post the position and appoint the candidate with the most seniority. Arbitration was called for if the agreement was violated.

This court found the agreement void as a matter of law. It concluded that the statute clearly and unambiguously conferred sole authority on the circuit court judge to appoint a register in probate. The agreement essentially bargained away that right forcing the judge to appoint a particular person and giving the arbitrator the ultimate power to decide the appointment.

In *Crawford County,* the court of appeals applied the holding in *Iowa County* to conclude, inter alia, that the appointed deputies of the register of deeds and the clerk of the circuit court could not be placed under the collective bargaining agreement and made a mandatory subject of bargaining. *Crawford County,* 177 Wis. 2d at 69. Doing so, the court determined, would impermissibly interfere with the statutory pow-

ers of the clerk and register to appoint and dismiss their deputies under secs. 59.38(1), Stats., ("Every clerk of the circuit court shall appoint one or more deputies and the appointments . . . shall be revocable by the clerk at pleasure. . . ."), and 59.50 (1989–90) ("Every register of deeds shall appoint one or more deputies, who shall hold their office during his pleasure . . .."), respectively. *Id.*

These cases are easily distinguished. The statutes in *Iowa County* and *Crawford County* contained little or few limits on the official's power to appoint subordinates and likewise afforded no protections to the appointed subordinates. Unlike those statutes, the sheriff's power to dismiss deputies in sec. 59.21, Stats., is limited by sec. 59.21(8)(b), which protects deputies' employment while on good behavior and indicates the ability to collectively bargain over conditions of employment including termination.

In addition, unlike the statutes in *Iowa County* and *Crawford County,* sec. 59.21, Stats., is replete with limitations on the sheriff's power. For example, subsection (1), which contains the sheriff's statutory grant of power, limits the number of deputies that the sheriff may appoint. Again, subsection (8)(a), limits the pool of applicants from which the sheriff may choose a deputy. Subsection (8)(a) provides that the County may require the sheriff to choose a deputy from a list of the three most qualified candidates. *See also* the restrictions on the rights of the sheriffs throughout the statutes: secs. 101.123 (clean indoor air law), 59.68 (jail construction), 302.34 (prisoner transfers), 165.85 (training requirements for deputies).

In sum, we conclude that the sheriff's powers in secs. 59.21(1) and (4), Stats., can be limited by the

collective bargaining agreement between the County and the deputies' union.

## III.

Having determined that Wirsing may not dismiss Heitkemper in violation of the collective bargaining agreement, we must determine whether he can demote Heitkemper from his position of investigator in violation of the agreement. Wirsing characterizes this issue as one of assignment and argues that it is governed by our decision in *Manitowoc*. This court in *Manitowoc* held that the power to assign a deputy to a position which entails particular law enforcement or peace preserving duties is a constitutionally protected function.

This is not an assignment issue. This issue turns on Wirsing's ability to demote Heitkemper who had already been assigned to the position of investigator. Thus, we are not governed by *Manitowoc*. Our holding in *Manitowoc* was limited to assignment, we did not address whether, once assigned, the sheriff could demote a deputy at will. Accordingly, we do so now.

In the first section of our opinion, we determined that the power to dismiss a deputy was not a constitutionally protected function of the sheriff. In doing so, we extended *Buech* to its logical conclusion and held that since the power to appoint was not constitutionally protected, neither was the power to dismiss. Like the power to appoint and dismiss, the power to demote is best characterized as an administrative function of the sheriff, i.e., a function dealing with the internal management of the office. Although it does not amount to terminating Heitkemper, demotion is an intermediate step between appointment and termination. Accordingly, we see little reason to treat it differently

from those duties. We held in *Buech* and reiterated in the first section of this opinion that common, administrative functions did not give "character and distinction" to the office of sheriff at the common law, and accordingly are not constitutionally protected. *See Buech,* 171 Wis. at 482. Rather, the power to demote, like the power to appoint and dismiss, may be regulated by the legislature as it is here in sec. 59.21(8)(b)1 (demotion by the sheriff is subject to grievance procedures), and the collective bargaining agreement.

In sum, we conclude that because neither Wirsing's power to dismiss nor demote a deputy is constitutionally protected, and because the collective bargaining agreement does not conflict with Wirsing's statutory powers under secs. 59.21(1) and (4), Stats., the collective bargaining agreement is valid and enforceable. Accordingly, we affirm.

*By the Court.*—The judgment of the circuit court is affirmed.