In re the Matter of a Certain Arbitration Between:
BROWN COUNTY SHERIFF'S DEPARTMENT , Petitioner-
Respondent-Petitioner,

v.

BROWN COUNTY SHERIFF'S DEPARTMENT NON-
SUPERVISORY EMPLOYEES ASSOCIATION, Respondent-
Appellant.

Supreme Court

*No. 93–1959. Oral argument April 25, 1995.—Decided June
26, 1995.*

(Also reported in 533 N.W.2d 766.)

For the petitioner-respondent-petitioner there were briefs by *Robert W. Burns* and *Godfrey & Kahn,*

S.C., Green Bay and oral argument by *Robert W. Burns.*

For the respondent-appellant there were briefs by *Frederick J. Mohr* and *Frederick J. Mohr, S.C.,* Green Bay and oral argument by *Frederick J. Mohr.*

Amicus curiae briefs were filed by *Kevin P. Reak* and *Decker & Gunta, S.C.,* Milwaukee for The Badger State Sheriffs' Association.

Amicus curiae briefs were filed by *Gordon E. McQuillen* and *Cullen, Weston, Pines & Bach,* Madison for The Wisconsin Professional Police Association.

JANINE P. GESKE, J. The petitioner, the Brown County Sheriff's Department (the sheriff), seeks review of an unpublished decision of the court of appeals, filed February 8, 1994, which reversed a portion of a circuit court order confirming in part and modifying in part an arbitration award. The sheriff who was serving at the time of the incident involved in this case had recommended that Deputy Donald Stewart (Stewart) be dismissed for misconduct. However, the arbitrator ordered a 30-day suspension without pay, after which Stewart was to be reinstated as deputy. The Circuit Court for Brown County, William M. Atkinson, Circuit Judge, modified the award so as to eliminate any requirement that the sheriff who was subsequently elected either deputize Stewart or reinstate him to his former position as a patrol officer. The circuit court reasoned that the act of deputization is a constitutionally protected function of the sheriff that may not be restricted by the terms of a collective bargaining agreement.

The Brown County Sheriff's Department Non-Supervisory Employees Association (the union)

appealed from the circuit court's judgment, and the court of appeals affirmed in part and reversed in part. Specifically, the court of appeals, though confirming the arbitration award, reversed the circuit court's order requiring modification of the award and held that because a sheriff's power to deputize officers is not a constitutionally protected function, the arbitrator did not exceed his authority by making an award which required Stewart's reinstatement as deputy.

The issue before this court is whether a newly elected or reelected sheriff's power to dismiss or not to reappoint a previously appointed deputy is constitutionally[1] or statutorily protected and, therefore, not subject to or limited by a collective bargaining agreement negotiated between a county and a labor union. For the reasons set forth below, we affirm the decision of the court of appeals and hold that the power of a newly elected or reelected sheriff to dismiss or not to reappoint a previously appointed deputy is not constitutionally or statutorily protected.

Donald Stewart has been employed as a Brown County sheriff's deputy since 1978. In the summer of 1990, Stewart and several other Brown County deputies responded to a disturbance call from the Greenleaf Firemen's Picnic. Arrests were made, and the picnic was shut down. Two months after the picnic, the sheriff, Leon Pieschek (Pieschek), employed two investigators from the Milwaukee County Sheriff's

---

[1] *See* Art. VI, § 4(1) of the Wisconsin Constitution, which provides:

> **County officers; election, terms, removal; vacancies.** SECTION 4. . . . (1) Sheriffs, coroners, registers of deeds, district attorneys, and all other elected county officers except judicial officers and chief executive officers, shall be chosen by the electors of the respective counties once in every 2 years.

Department to investigate citizen complaints that the officers' conduct during the arrests was inappropriate.

The report submitted by investigators ten months later confirmed the allegations of misconduct and included the recommendation that Stewart be dismissed for (a) use of excessive force, stemming from a predisposition of hostility toward the citizens of Greenleaf, and (b) untruthfulness in reporting the incident during the investigation interview. Pieschek accepted the investigators' recommendation of dismissal. Discipline recommendations for the remaining deputies ranged from multiple-day suspensions to a suspension with demotion.

Stewart challenged his dismissal in March 1992, and the following issue was submitted to arbitration: whether there was just cause for the recommendation to dismiss Stewart, and, if not, what was the appropriate remedy? In an opinion and award filed December 19, 1992, arbitrator Gil Vernon (Vernon) concluded that Stewart had indeed violated three of the following sheriff's department rules:

## Rule No. 1

Officers shall conduct themselves, both officially and unofficially, in such a manner so as not to bring discredit to the department and/or disgrace or dishonor to themselves.

## Rule No. 3

When dealing with the public or other members of the department, employees shall exercise control of their tempers, be attentive, discreet, patient, and will not use threatening, profane or insulting language, nor behave in a disrespectful, insubordinate or aggressive manner. They shall supply the

requested information they are able to and refer other questions to the proper authorities.

### **Rule No. 17**

No member of the department shall make false official reports, or knowingly enter or cause to be entered in any department books or records, any inaccurate, false or improper 'bookings' or registration of police information or matter.

However, Vernon also stated that Stewart's culpability with regard to these rules was not materially distinguishable from that of the other deputies involved in the Greenleaf incident. Therefore, Vernon concluded that dismissal could not be justified on the basis of the rule violations and would be so grossly disproportionate to the penalties given to the others as to be without just cause and contrary to the collective bargaining agreement between Brown County and the union.

Vernon did find it necessary to impose a greater penalty on Stewart than the other deputies because he exhibited neither remorse for his actions nor any fundamental appreciation that his behavior during the arrests was inappropriate. Accordingly, Vernon recommended a 30-day suspension without pay as the maximum penalty for Stewart's conduct. Additionally, Vernon advised the sheriff to require that Stewart (a) seek medical and psychological help for the bias and hostile attitude toward Greenleaf citizens and the sheriff's department administration; and (b) obtain certification of fitness for duty prior to his return from suspension. We must note at this point that the appropriateness of the arbitration award is not before us.

In January 1993, Michael Donart was elected Brown County Sheriff. Pursuant to § 59.21(1), Stats.,[2] he swore in the deputies for his two-year term of office. Donart, however, refused to deputize Stewart, stating that he believed such authorization would not be in the best interests of law enforcement in Brown County. Donart then assigned Stewart to a nonsworn security position within the sheriff's department at the same rate of pay as a deputy.

The union filed a motion with the circuit court, requesting an order confirming the arbitration award issued by Vernon. The sheriff filed a countermotion to vacate, modify, or correct the award, arguing that matters of deputization or particular job assignments are constitutionally protected powers of the sheriff. As such, the sheriff claimed that these powers should not be subject to collective bargaining agreements or arbitration awards which arise out of those agreements.

The circuit court confirmed the arbitration award but modified it so as to eliminate any requirement that the sheriff either deputize Stewart or reinstate him to his former position as a patrol officer. In its decision, the circuit court reasoned: (1) the office of the sheriff is a constitutional office, the duties of which encompass maintaining law and order and preserving the peace within the county; (2) the sheriff is not bound by terms of a collective bargaining agreement or an arbitration award arising out of such an agreement with regard to matters that interfere with the sheriff's constitutional duties; (3) the duties of a patrol officer implicate both the law enforcement and peace-preserving functions of

---

[2] Section 59.21(1), Stats., provides in pertinent part:

**59.21 Sheriff; undersheriff; deputies. (1)** . . . Within 10 days after entering upon the duties of the office of sheriff, the sheriff shall . . . appoint deputy sheriffs for the county . . ..

the sheriff; therefore, the sheriff may not be restricted with regard to who is appointed to execute those law enforcement duties.

The court of appeals affirmed in part and reversed in part the decision of the circuit court. Specifically, the court of appeals confirmed the arbitration award but reversed the circuit court's order requiring modification, holding that a sheriff's power to deputize officers is not a constitutionally protected function. Consequently, the court of appeals concluded that the arbitrator did not exceed his authority by making an award requiring Stewart's reinstatement as a deputy.

In another case decided today, we considered the issue of whether a collective bargaining agreement usurps a sheriff's constitutional and statutory authority to dismiss a previously appointed deputy at the commencement of the sheriff's term. *See Heitkemper v. Wirsing,* 194 Wis. 2d 182, 533 N.W.2d 770 (1995). In this case, Stewart's status as a deputy in the Brown County Sheriff's Department is not dependent upon the election of the sheriff or the length of the sheriff's term of office. Accordingly, the arbitrator's award requiring the reinstatement of Stewart to his position as deputy does not conflict with Donart's constitutional or statutory powers under § 59.21(1) and (4), Stats.

Similar to the analysis applied in *Heitkemper,* the issue we consider is whether the collective bargaining agreement between Brown County and the union can limit Donart's power to dismiss Stewart as a deputy. In particular, is Donart's power to dismiss Stewart constitutionally or statutorily protected? We conclude that the sheriff's authority is not so protected because

273

'[w]hile at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff.'

*Heitkemper,* 194 Wis. 2d at 189 (quoting *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 482, 177 N.W. 781 (1920)).

Stewart was deputized in 1978. That appointment, up to and including the present time, has never been terminated. Section 59.21(6), Stats., requires that "[e]very appointment of an undersheriff or deputy, except deputations to do a particular act, and every revocation of such appointment shall be in writing and be filed and recorded in the office of the clerk of the circuit court." Although Brown County has not adopted the civil service system for suspension, demotion, or dismissal described in § 59.21(8)(b), Stats., the collective bargaining agreement at issue in this case establishes similar procedural safeguards. In particular, Article 12 of the agreement describes the disciplinary procedure for the county and provides:

No regular employee shall be disciplined or discharged except for just cause. Written notice of the discipline, suspension, or discharge and a description of the incident warranting the action shall be given to the employee with a copy to the bargaining unit.

The employee will have an informal hearing before the Sheriff . . . before any disciplinary action is taken. The employee and the bargaining unit will be notified of the reason for the discipline and the

time of the hearing at least 24 hours prior to the time of the informal hearing . . . .. The employee may be represented by a bargaining unit representative at the hearing or a representative of his own choice. The Sheriff or Chief Deputy will notify the employee and the bargaining unit in writing of his decision within forty-eight (48) hours of the hearing. . . .

The employee may use the grievance procedure to appeal the disciplinary action and such grievance will be presented directly to the fourth step.[3] Any grievance that may result from such action shall be considered waived unless presented in writing within 15 calendar days of the receipt of the notice by the employee.

Upon examination of the collective bargaining agreement, we are satisfied that the provisions describing the grievance process and dismissal can be harmonized with the sheriff's statutory powers under § 59.21(1) and (4), Stats. *See Heitkemper,* 194 Wis. 2d at 194 (citing *Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis. 2d 90, 106, 264 N.W.2d 594 (1978)).

The sheriff argues that he should not be bound to the "agreement to arbitrate" because he is not a party to the collective bargaining agreement. However, the legislature has provided the county, not the sheriff, with the option of adopting § 59.21(8)(b), Stats. Likewise, the county can clearly choose to collectively bargain the terms of employment and suspension, demotion, and dismissal of deputy sheriffs.[4] Brown

---

[3] The fourth step in the grievance procedure, Article 46 in the collective bargaining agreement, describes the arbitration process.

[4] Section 111.70, Stats., provides the basis for collective bargaining between Brown County and its deputies.

County did not adopt the civil service system described in § 59.21(8)(b) but, instead, reached a collective bargaining agreement which provides similar procedural safeguards. We conclude that the restriction on the sheriff's authority is the same, whether the county follows § 59.21(8)(b) or utilizes a collective bargaining agreement.

In this case, Stewart's status as a deputy, though in limbo due to arbitration and the current litigation, remained in effect. Further, the continuation of that status was not in peril when Donart assumed his duties as sheriff in January 1993. As in *Heitkemper,* we conclude that the collective bargaining agreement, similar to the underlying purpose of § 59.21(8)(b), Stats., expresses an intent that deputies are to be treated as more than at-will employees who can be fired every two years by the sheriff. "If the expectation [of a tenure lasting more than two years] depended on the graces of the sheriff, . . . the office of deputy would become totally a political one. . . . This in turn would diminish the professional law enforcement protection provided to citizens of the counties." *Heitkemper,* 194 Wis. 2d at 198. Thus, the sheriff's actions in this case, though not governed by § 59.21(8), Stats., are controlled by applicable collective bargaining procedures relating to dismissal.

We conclude that when Donart began his term of office as sheriff of Brown County in January 1993, his power to dismiss or not to reappoint Stewart was not constitutionally or statutorily protected. As a result of the collective bargaining agreement, Donart is bound by the arbitrator's award. Pursuant to that award, the sheriff may require Stewart to (a) seek medical and

psychological help for the bias and hostile attitude he harbors toward Greenleaf citizens and the sheriff's department administration and (b) obtain certification of fitness for duty prior to his return from suspension. If Stewart is found fit for service, the sheriff is bound to reinstate him. In the event Stewart is found unfit for service, his status will be controlled by the relevant provisions of the collective bargaining agreement. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.