142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Marshal Gary ESKE, Plaintiff-Appellant,
v.
Racine County, Wisconsin et al., Defendants-Appellees
 No. 97-3997.
 United States Court of Appeals, Seventh Circuit.
 Argued April 28, 1998.
Decided May 6, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 92-C-1258 Charles N. Clevert, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. KENNETH F. RIPPLE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Marshal Eske was a pretrial detainee at the Racine County Jail in Racine, Wisconsin, from October 16, 1989, until January 9, 1990. He filed this civil rights action, 42 U.S.C. § 1983, against various jail personnel claiming they violated his Eighth Amendment rights by withholding medications prescribed to treat his condition--"irritable bowel syndrome." The district court granted summary judgment for the defendants and Eske appeals. We review the decision of the district court de novo. Larson v. City of Beloit, 130 F.3d 1278, 1282 (7th Cir.1997). Because we find Eske's claim, which in part is doomed by his diary, to be meritless, we affirm.
 
 
 2
 In his complaint Eske alleged that the defendants were deliberately indifferent to his serious medical needs. Specifically, he says that while he was at the jail he suffered from a serious stomach ailment that caused severe abdominal cramping, diarrhea, and bloody stools. He claimed that the defendant guards deliberately withheld medications prescribed to alleviate these symptoms.
 
 
 3
 The district court granted summary judgment based on a mountain of evidence unfavorable to Eske's claim. When he arrived at the jail, two medications that he was taking. Motrin and Kaotin, were confiscated. But medication logs maintained at the jail indicate that guards dispensed the Motrin and Kaotin to Eske until the drugs ran out. Eske was taken to see Dan Wrensch, a physician assistant, two days after he arrived at the jail, but he became aggressive and was taken back to his cell. He saw Dr. Benson, a consulting physician to the jail, five times over the following five weeks. At the first visit Dr. Benson diagnosed Eske with gastroenteritis[1] and prescribed Kaopectate to relieve Eske's diarrhea and Bentyl to relieve his intestinal cramps. Medication logs indicate that the Kaopectate and Bentyl were dispensed as prescribed.
 
 
 4
 At the second visit with the doctor Eske complained of back pain and abdominal cramps. Dr. Benson determined that Eske had irritable bowel syndrome, which Benson describes as a nonserious condition associated with anxiety and depression, and adjusted the Bentyl and Kaopectate prescriptions. On his third doctor visit Eske submitted a medical request form that listed the following complaints: "Hurt my arm on edge of bed[,] back aches[,] stomach problems worsening[,] ankles sore[,] jaw hurts[,] diet wrong[,] scalp itches[,] nose bleeds." Dr. Benson examined Eske and determined that "everything was normal." He "diagnosed somatoform disorder because [Eske] had multiple bodily complaints with no clinical correlation." The doctor ordered a stool analysis, but the test came back negative. In addition to the Kaopectate and Bentyl the doctor prescribed Dolobid, an analgesic that is stronger than Motrin. The medication logs indicate that all three medications were dispensed as prescribed.
 
 
 5
 During his fourth visit to the doctor Eske complained about abdominal pain and diarrhea, but again Dr. Benson's examination revealed no stomach problems. Dr. Benson diagnosed Eske as suffering from an anxiety disorder, thereby explaining the "multiple complaints that were out of proportion to his physical status which appeared healthy and normal," and prescribed Immodium, an antidiarrheal drug, and Chlor-trimaton, an antihistamine. The medication logs show that the Immodium was dispensed as prescribed but that the Chlor-trimaton was not because Eske was caught hoarding it. During the final visit, Dr. Benson again concluded that Eske's health was normal. After the last doctor visit, a nurse. Joann Jurgens, pre-screened Eske and determined that none of his subsequent complaints warranted attention from the doctor, and when appropriate she referred Eske to physician assistant Wrensch.
 
 
 6
 The defendants submitted an affidavit from each of the three guards responsible for dispensing Eske's medication. Martin Christensen, Donald Reisenauer, and Richard Wahlen each stated that they never withheld Eske's medication, and that they always forwarded medical request forms to Nurse Jurgens. Additionally, each guard verified that the medication logs accurately reflected what had happened. So there was a ton of evidence pointing to the meritlessness of Eske's Eighth Amendment claim that the defendants were deliberately indifferent to his severe medical needs. But that's not the end of the story.
 
 
 7
 While at the jail, Eske kept a diary. Although the entire diary is not reproduced in the record, the defendants attached 74 pages of it to their summary judgment motion. Eske did not submit any additional portions in response. The diary is best characterized as a long diatribe wherein Eske complains about everything. He regularly complained about the food, his girlfriend, the guards, his lawyers, the temperature of the shower water, the quality of the shaving mirrors, the lack of entertainment, the race of his various cell mates, the intelligence of his cell mates, the jail's rules, etc. For example, approximately half of the journal entries begin "SSDD," which Eske explains stands for "same shit, different day." He alternately referred to the jail meals as dog food, bird food, sewer water, slop, etc. As to his girlfriend, he appears to have resented that she was not also incarcerated so that she could amuse him. Throughout the diary he reported placing numerous daily calls to her, and when she was not home he berated her--although he also reported that she was in school and had an evening job. He also complained endlessly about his lack of mail (from his girlfriend and others), that jail officials read the mail before he got it, and about the delay in his receipt of letters.
 
 
 8
 With all the complaints Eske voiced in the diary, one omission stands out: He never once said the guards failed to dispense his medications. In fact, only once does Eske gripe about the guards' handling of his medications, on the evening of December 19, 1989, he says they dispensed his medications an hour late.
 
 
 9
 In the diary, Eske regularly catalogued his various physical ailments and complained about the medical attention he received. For example, on November 9 Eske described Doctor Benson as "a real joke," writing that his visit lasted "about 2 minutes." On December 21 he purported to quote at length Nurse Jurgens' statement that he did not have any legitimate medical needs and, essentially, that he was wasting limited medical resources with his constant fallacious complaints. On November 30, however, Eske wrote that his doctor's visit had been very productive because Doctor Benson "really checked [him] out" and "asked even [sic] if this was all that was bothering [him]." On November 10 Eske wrote that the guards discovered the medications he had been "saving," and on December 1 he contemplated refusing to take his medications because the guards could not tell him what each pill was supposed to do.
 
 
 10
 The only evidence Eske submitted to rebut the defendants' motion for summary judgment was his own two-page declaration and excerpts from the transcript of his deposition, taken on June 11, 1996, over 6 years after he left the jail. In the declaration Eske stated: "I can recall only seeing medical personnel on 3 separate occasions," and "I cannot remember being prescribed more than three types of medication while I was at the [jail]" During the deposition Eske stated that he had diarrhea and bloody stools during the entire time he was at the jail. He said that he was at the jail for at least 3 weeks before he saw the doctor and that he received no medications on 70-75 days.
 
 
 11
 Summary judgment is appropriate when the record reflects no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Talanda v. KFC Nat'l Management Co., No. 97-2025, slip op. at 9. Eske "can avoid summary judgment only by setting forth specific facts showing that there is a genuine issue for trial." Talanda, slip op. at 9 (citation omitted). "[T]here is no issue for trial unless there is sufficient evidence ... for a jury to return a verdict for [Eske]." Anderson, 477 U.S. at 249. In other words, "a genuine issue of material fact exists only if a fair-minded jury could return a verdict for [Eske] on the evidence presented." Larsen, 130 F.3d at 1282.
 
 
 12
 Eske, of course, was entitled to adequate medical treatment under the Due Process Clause. Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 603, 139 L.Ed.2d 891 (1997). Jail officials violate this right if they are deliberately indifferent to a detainee's serious medical needs. Id. at 91. In this context, deliberate indifference is established by showing that a jail official knows of and disregards an excessive risk to a detainee's serious medical need. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Mathis, 120 F.3d at 91.
 
 
 13
 Eske attempts to establish a triable issue by pointing to his deposition testimony. His principal argument on appeal is that his sworn statements are sufficient to allow a reasonable jury to conclude that the defendants knowingly withheld his medications over approximately 70 days during his stay at the jail, thereby deliberately increasing the risk to his health. Eske believes the district court engaged in an improper credibility determination when it granted summary judgment on this issue.
 
 
 14
 We conclude that, on this record, no reasonable jury could find that the guards withheld Eske's medications. Here, Eske's own contemporaneous record of his jail experience-his "Dear Diary" entries--is devoid of any indication that the guards ever withheld his medications, even though he wrote at length about every other complaint he had regarding his treatment by the guards. It is inconceivable that Eske would have neglected to document such egregious behavior by the guards had it actually occurred. Eske's deposition, made 6 years after the relevant events, does not create a genuine issue of fact given his precise and comprehensive diary entries.
 
 
 15
 Eske asserts that Christensen, Wahlen, and Reisenauer could have falsified the medication logs. He argues that the case essentially involves his word against those of the guards. Eske's falsification assertion, however, is wholly without evidentiary support. Although it is conceivable that the guards could have falsified the medication logs, we have never allowed some metaphysical doubt about a material fact to defeat summary judgment. See Filippo v. Northern Ind. Pub. Serv. Corp., No. 97-1541, slip op. at 6 (7th Cir. Apr.10, 1998), Larsen, 130 F.3d at 1282; Smith v. Severn, 129 F.3d 419, 425 (7th Cir.1997). Furthermore, this case does not involve a summary judgment decision based only on conflicting affidavits, for the district court was presented with Eske's contemporaneous record of his jail experience, which was comprehensive in cataloguing his complaints about jail life but never mentioned that the guards failed to dispense his medications. His own vague and stale statements cannot overcome the strong implication of the diary that the guards dispensed the medications as prescribed.[2]
 
 
 16
 For these reasons, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Neither party submitted any evidence defining gastroenteritis. The Encyclopedia of Medicine provides the following definition
 Inflammation of the stomach and intestines, often causing sudden and sometimes violent upsets. The illness does not usually last more than two or three days and the sufferer tends to recover without any specific treatment other than replacement of lost fluid and salt.
 American Medical Association, Encyclopedia of Medicine 476 (Charles B. Clayman ed., Random House 1989).
 
 
 [2]
 Although in his complaint Eske also alleged that the defendants interfered with his access to Dr. Benson and that the medical treatment he received from Dr. Benson and Nurse Jurgens was inadequate, Eske has abandoned these claims on appeal. Additionally, at oral argument Eske's attorney explicitly waived appeal on the deprivation-of-food claim